(Reap. Dec. 10834)

DAYSTROM, INC., INTL. SALES DIV. *v.* UNITED STATES

UNITED STATES *v.* C. M. IMPORT & EXPORT

C. M. IMPORT & EXPORT CORP. *v.* UNITED STATES

Entry Nos. 463682 ; 772748.

(Decided October 20, 1964)

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) and *Barnes, Richardson & Colburn* (*Hadley S. King* and *Norman C. Schwartz* of counsel) ; *H. William Tanaka* and *Lewis D. Spencer* associate counsel; for the importers.

*John W. Douglas,* Assistant Attorney General (*Samuel D. Spector* and *Glenn E. Harris,* trial attorneys), for the United States.

FORD, Judge: The three cases listed above, consolidated for the purpose of trial, involve two entries and present for determination the proper dutiable value of certain electronic tubes, exported from Japan.

Appeal R61/21866 taken by the importer involves one entry and embraces the following tubes manufactured by Tokyo Shibaura Electric Co., Ltd. (hereinafter referred to as "Toshiba") :

```
       6 C 4
      12 BH 7 A
       6 J 6
       6 U 8
       6 BE 6
```

the other entry is involved in a cross-appeal by the importer, R62/9215, and an appeal by the collector of customs at the port of New York, R62/5795, and involves the following tubes manufactured by New Nippon Electric Co., Ltd. (hereinafter referred to as N.E.C.) :

```
      12 AV 6
      12 BE 6
      12 BA 6
      35 W 4
      50 C 5
```

There is no dispute between the parties that the merchandise involved herein, electronic tubes used for radio and television receivers, are contained on the final list as compiled by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521, and as a consequence was appraised under the provisions of section 402a of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

The parties are also in agreement that appraisement was made under the provisions of section 402a(c) of the Tariff Act of 1930, as amended, *supra*, foreign value, and the attorneys for the importers contend the proper basis for appraisement is cost of production under the provisions contained in section 402a(f) of said act, as amended, *supra*.

The parties have orally stipulated the following facts for the trial of this matter:

1. That, if the court finds foreign value to be the proper basis for appraisement, the following represent the correct dutiable foreign value of the several itemized tubes in appeal R62/5795 as defined by the statute:

Value (each)

| 12 AV 6 | 315 Yen, less 50%, plus export packing |
|---------|----------------------------------------|
| 12 BE 6 | 450 " " " " |
| 12 BA 6 | 380 " " " " |
| 35 W 4 | 365 " " " " |
| 50 C 5 | 600 " " " " |

2. That all tubes bearing the same description number are similar in all respects to any other tube bearing the same description number made by any other manufacturer in Japan.

3. That on or about the date of exportation of the merchandise herein involved such or similar merchandise was not freely offered for sale for export to the United States.

4. That on or about the date of exportation such or similar merchandise was not freely offered for sale in the principal markets of the United States.

5. That in the event the court finds there is no foreign value for such or similar merchandise, as defined in section 402a(c) of the Tariff Act of 1930, as amended, *supra*, then the cost of production, as defined in section 402a(f), as amended, *supra*, is the proper basis of appraisal, and the cost of production is equal to the invoice prices, less ocean freight, in R61/21866 and to the unit invoice price, net packed, in reappraisements R62/9215 and R62/5795.

The foreign value and cost of production definitions referred to above read as follows:

Section 402a, Tariff Act of 1930, as amended, *supra*, 19 U.S.C.A., section 1402:

### FOREIGN VALUE

(c) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

### COST OF PRODUCTION

(f) For the purpose of this subtitle the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of mechandise of the same class or kind.

With the exception of the oral stipulation entered into by and between counsel for the respective parties, the record is documentary and consists of 34 affidavits, received on behalf of the importers, and 13 exhibits consisting of 9 reports of customs agents and 4 affidavits, received on behalf of the United States.

The evidence adduced on behalf of the importers establishes that, on or about the date of exportation herein, there were 13 manufacturers of electronic tubes in Japan. The importers by virtue of exhibits 3A, 3B, 6, 7, and 10 through 17, have negated the existence of a for-

eign value for 10 of these manufacturers. This fact is conceded by the Government in its brief.

By virtue of the stipulation and the elimination of 10 of the 13 manufacturers, the remaining 3 manufacturers, thus involved in the importation herein, are Toshiba and N.E.C., plus the additional manufacturer, Kobe Kogyo Corp. With respect to these three manufacturers, the record establishes, and the parties have agreed by statements contained in their briefs, that, by virtue of certain restrictions by these manufacturers, there is no foreign value for the tubes manufactured by these companies on the primary level. In the case of Toshiba all sales were to one selected purchaser, its wholly owned subsidiary Toshiba Shoji. New Nippon restricted its sales to original equipment manufacturers, to other manufacturers subject to use restrictions, to selected dealers in areas outside of Tokyo in which N.E.C. had stock holdings, and to selected independent dealers in the Tokyo area. Sales made by Kobe Kogyo Corp. were restricted to "selected" purchasers. The contention of the Government is that foreign value does exist on a secondary level.

Where restrictions exist on the primary level and the merchandise is freely offered on a secondary level, the market value or price at which the merchandise is freely offered at this level may properly be considered for the purpose of appraisement. *United States* v. *H. W. Robinson & Co. et al.*, 19 CCPA 274, T.D. 45436; *United States* v. *J. J. Gavin & Co., Inc. (Soelder-Heyman Co.)*, 24 Cust. Ct. 576, Reap. Dec. 7808. The question presented to the court is, therefore, further narrowed to the extent of a determination as to whether the imported merchandise is freely offered in the home market on a secondary level. If the record does establish this fact for any one or all of the three manufacturers to be considered, then the Government must prevail. On the other hand, if the record establishes that a foreign value does not exist on a secondary level, and since export and United States value have been stipulated not to exist, then the proper basis of appraisement is cost of production and the importers must prevail.

The evidence adduced by the importer attempts to establish that there are restrictions imposed at the secondary level which would eliminate foreign value. These restrictions relate to control of the resale price or the geographical area in which the tubes may be sold or the qualifications of the dealers to whom they may sell. In at least one instance, a copy of an agreement was attached to an affidavit received in evidence as plaintiffs' exhibit 4, wherein specific restrictions were imposed. The evidence adduced by the Government on the other hand in both its reports and affidavits, wherein various dis-

tributors at the secondary level were interviewed, tends to negate the imposition of restrictions. However, even if I were to consider the question of the imposition of restrictions, it would appear that enforcement of these restrictions was such as would bring this case under the principles set forth in *United States* v. *Glanson Co.*, 47 CCPA 110, C.A.D. 740, wherein suggested resale prices did not compel resale at these prices and did not amount to a controlled market. Similarly, in the case at bar, the evidence tends to satisfactorily establish that the so-called restrictions were not enforced to the extent that a controlled market existed.

I, accordingly, find that the involved so-called restrictions do not amount to a controlled market which would eliminate a foreign value.

Alternatively, the importers contend that there is no one price at which the merchandise is freely offered. For the purpose of appraisement under the tariff laws of the United States, there must be one price at which all may be able to purchase. *United States* v. *Passavant*, 169 U.S. 16; *United States* v. *M. V. Jenkins et al.*, 39 CCPA 158, C.A.D. 479; *Joseph Fischer* v. *United States*, 38 CCPA 143, C.A.D. 452; *United States* v. *M. Minkus*, 21 CCPA 382, T.D. 46912, and cases cited therein.

The record herein establishes by virtue of the Government's own exhibit L that the following prices for the various tubes manufactured by Toshiba, listed below, were made by one distributor:

| Column 1<br><br><br>Style | Column 2<br>Toshiba<br>selling price<br>to Hirose | Column 3<br>Hirose<br>selling price<br>to retailers | Column 4<br>Hirose retail<br>store selling price<br>to general public |
|---|---|---|---|
| 12AT6 | ¥165 | ¥215 | ¥330 |
| 12BE6 | 235 | 306 | 470 |
| 12BA6 | 200 | 260 | 400 |
| 35W4 | 190 | 247 | 380 |
| 50C5 | 342 | 420 | 600 |
| 12AU7 | 456 | 560 | 800 |
| 6CB6 | 399 | 490 | 700 |
| 6U8 | 513 | 630 | 900 |
| 6C4 | 456 | 560 | 800 |
| 12BH7A | 399 | 490 | 700 |
| 6J6 | 456 | 560 | 800 |
| 6BE6 | 235 | 306 | 470 |
| 5V4G | 570 | 700 | 1000 |

In addition to this, discounts of 4 percent were granted to purchasers in column 3, and the discount was not "fixed" by the quantity but only upon "circumstances." A discount of 6 percent from the prices set forth in column 3 was given to wholesalers in rural areas.

Defendant's exhibit M sets forth prices of the following tubes manufactured by Toshiba:

| Column 1 | Column 2 | Column 3 | Column 4 |
|---|---|---|---|
| | Retail price (retail store to consumer) | Wholesale price (Tomihisa Musen to retail store) | Maker's price (from Toshiba to Tomihisa Musen) |
| Tube No. | | | |
| 12AV6 | ¥330 | ¥180 | ¥153 |
| 12BE6 | 470 | 262 | 223 |
| 12BA6 | 400 | 218 | 185 |
| 35W4 | 380 | 206 | 175 |
| 50C5 | 600 | 384 | 327 |
| 12AU7 | 800 | 411 | 349 |
| 6CB6 | 700 | 322 | 273 |
| 6U8 | 900 | 404 | 343 |
| 6C4 | 800 | 512 | 436 |
| 12BH7A | 700 | 321 | 273 |
| 6J6 | 800 | 372 | 316 |
| 6BE6 | 470 | 262 | 223 |

Similarly, defendant's own collective exhibit H substantiates the fact that one distributor sells tubes of the type involved herein manufactured by N.E.C. at the following prices, less 50 percent or less 60 percent to 70 percent, to selected purchasers:

| Tubes | Price in Yen, each |
|---|---|
| 6BE6 | ¥450 |
| 6C4 | 800 |
| 6J6 | 800 |
| 6U8 | 900 |
| 12AV6 | 315 |
| 12BA6 | 380 |
| 12BE6 | 450 |
| 12BH7A | 700 |
| 35W4 | 365 |
| 50C5 | 600 |

Defendant's exhibit H further states that upon interviewing two other distributors they indicated that the price depended upon the bargaining ability of the buyer.

Finally, with respect to the last manufacturer, the Kobe Kogyo Corp., defendant's collective exhibit B indicates the following prices at which the various types listed below were sold by a distributor:

| Tube types | Wholesale prices | Retail prices |
|---|---|---|
| 12BA6 | ¥130 Each | ¥240 Each |
| 12BE6 | 130 " | 240 " |
| 12AV6 | 130 " | 170 " |
| 12AU6 | 200 " | 320 " |
| 35W4 | 150 " | 250 " |

In the same exhibit, the prices of a different distributor are set forth as follows for the tubes listed below, which were manufactured by the Kobe Kogyo Corp.:

| Tube types | Retail prices | Prices to amateurs | Wholesale prices |
|---|---|---|---|
| 50C5 | ¥508 | ¥269 | ¥242 |
| 12BA6 | 400 | 227 | 204 |
| 12BE6 | 470 | 218 | 196 |
| 12AV6 | 330 | 155 | 139 |
| 12AU6 | 600 | 340 | 306 |
| 35W4 | 380 | 176 | 158 |

Defendant's collective exhibit C further sets forth the following prices for tubes manufactured by the Kobe Kogyo Corp., which are involved herein:

| Tube type | Price |
|---|---|
| 6BE6 | ¥130 |
| 6U8 | 250 |
| 12AV6 | 130 |
| 12BA6 | 130 |
| 12BE6 | 130 |
| 12BH7A | 180 |
| 35W4 | 130 |

Similarly, in said exhibit C, the prices of another distributor for the following tubes manufactured by the Kobe Kogyo Corp. are set forth as follows:

| Tube type | Price |
|---|---|
| 6BE6 | ¥188 |
| 6C4 | 320 |
| 6J6 | 300 |
| 6U8 | 330 |
| 12AV6 | 132 |
| 12BA6 | 160 |
| 12BE6 | 188 |
| 12BH7A | 260 |
| 35W4 | 152 |
| 50C5 | 232 |

In the same exhibit, another distributor stated that he sold the following tubes manufactured by Kobe Kogyo Corp. at the following prices, less 20 percent:

| Tube type | Wholesale after rebate | Wholesale price | Retail price |
|---|---|---|---|
| 6BE6 | ¥357 | ¥434 | ¥700 |
| 6C4 | 396 | 496 | 800 |
| 6J6GT | 294 | 368 | 800 |
| 6U8 | 296 | 370 | 900 |
| 12AV6 | 99 | 124 | 330 |
| 12BA6 | 147 | 184 | 400 |
| 12BE6 | 139 | 174 | 470 |
| 12BH7A | 240 | 300 | 700 |
| 35W4 | 112 | 141 | 380 |
| 50C5 | 172 | 215 | 580 |

Similarly, defendant's exhibit K sets forth the following prices of tubes manufactured by the Kobe Kogyo Corp., as follows:

| Tube type | Retail invoice price | Wholesale invoice price | Maker's invoice price |
|---|---|---|---|
| 12AV6 | ¥330 | ¥165 | ¥132 |
| 12BE6 | 470 | 235 | 188 |
| 35W4 | 380 | 190 | 152 |
| 12BA6 | 400 | 200 | 160 |
| 50C5 | 580 | 290 | 232 |
| 6BE6 | 470 | 235 | 188 |

It is quite evident from the foregoing prices as established by the exhibits of the Government that no one price exists for the tubes involved herein which were manufactured by Toshiba and the Kobe Kogyo Corp. The Government's own evidence also establishes that, with respect to the tubes manufactured by N.E.C., the prices vary depending upon the bargaining ability of the purchasers or that sales were made at the prices listed above at discounts varying from 50 percent to 70 percent. A price arrived at by bargaining is not one which may substantiate a foreign value. *Harry Garbey* v. *United States*, 24 CCPA 48, T.D. 48332. Accordingly, I am of the opinion that there is no one price at which tubes manufactured by N.E.C. may be purchased by all.

In view of the foregoing and based upon the stipulation entered into by and between counsel for the respective parties, that in the event the court does not find a foreign value and in view of the fact that it has been agreed that no export or United States value exists, the cost of production is the proper basis for appraisement.

On the record here presented, I find as facts:

1. That the merchandise consists of electronic tubes manufactured and exported from Japan.

2. That radio receiving tubes such as or similar to those involved herein appear on the final list as compiled by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

3. That said merchandise was appraised on the basis of foreign value under section 402a(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

4. That there were 13 manufacturers of tubes such as are involved herein in the country of exportation.

5. That 10 of these manufacturers did not freely offer or sell such or similar radio receiving tubes for consumption in Japan.

6. That, as to Toshiba, N.E.C., and Kobe Kogyo Corp., it has been established and agreed that none freely offered such tubes on the primary level for home consumption in Japan.

7. That there was no one price at which all could purchase tubes such as are involved herein for home consumption in Japan.

8. That by agreement such or similar merchandise was not freely offered for export to the United States.

9. That by agreement such merchandise was not freely offered for sale or sold in the principal markets of the United States.

10. That by agreement by and between counsel for the respective parties, the unit invoice prices in R61/21866, less ocean freight, and the unit invoice prices, net packed, in the case of reappraisements R62/5795 and R62/9215 are equal to the cost of production, as defined in section 402a(f) of the Tariff Act of 1930, as amended, *supra*.

I, therefore, conclude as matters of law:

1. That there is no foreign value, as defined in section 402a(c) of the Tariff Act of 1930, as amended, *supra*, for such or similar radio receiving tubes.

2. That there is no export or United States value, as defined in section 402a (d) or (e), respectively, of the Tariff Act of 1930, as amended, *supra*, for such or similar radio receiving tubes.

3. That the proper basis of appraisement is the cost of production, as defined in section 402a(f) of the Tariff Act of 1930, as amended, *supra*, and said costs of production are as stated in finding of fact number 10.