(A.R.D. 203)

UNITED STATES *v.* DAYSTROM, INC., INTL. SALES DIV.

UNITED STATES *v.* C. M. IMPORT & EXPORT

UNITED STATES *v.* C. M. IMPORT & EXPORT CORP.

Entry Nos. 463682; 772748.

## Third Division, Appellate Term

(Decided March 16, 1966)

*John W. Douglas,* Assistant Attorney General (*Samuel D. Spector* and *Glenn E. Harris,* trial attorneys), for the appellant.

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) and *Barnes, Richardson & Colburn* (*Hadley S. King* of counsel) ; *H. William Tanaka* and *Lewis D. Spencer* associate counsel; for the appellees.

Before DONLON and RICHARDSON, Judges ; DONLON, J., concurring

RICHARDSON, Judge: This application for review was filed by the Government for a review of the decision and judgment of a single judge sitting in reappraisement in *Daystrom, Inc., Intl. Sales Div., et al.* v. *United States* (*United States* v. *C. M. Import & Export*), 53 Cust. Ct. 447, Reap. Dec. 10834, and holding that cost of production is the proper basis of value of electronic radio tubes, exported from Japan and entered at New York.

The tubes involved in reappraisement R61/21866 were manufactured in Japan by Tokyo Shibaura Electric Co., Ltd. (referred to as "Toshiba"), are covered by one of the two entries involved herein, and are identified by the following tube-type designations: 6C4, 12BH7A, 6J6, 6U8, and 6BE6. These tubes were appraised on the basis of

foreign value under 19 U.S.C.A., section 1402(c) (section 402a(c), Tariff Act of 1930, as amended), at the following advanced unit values:

| Type | Value |
| --- | --- |
| 6C4 | 375 Yen, packed |
| 12BH7A | 200 " " |
| 6J6 | 250 " " |
| 6U8 | 280 " " |
| 6BE6 | 130 " " |

And the importer appealed for reappraisement against the basis of value adopted in the appraisement.

The tubes involved in the second entry, reappraisements R62/5795 and R62/9215 were manufactured in Japan by New Nippon Electric Co., Ltd. (referred to as N.E.C.), and are identified by the following tube-type designations, to wit, 12AV6, 12BE6, 12BA6, 35W4, and 50C5. These tubes were also appraised on the basis of foreign value under section 1402(c) at the following advanced unit values:

| Type | Value |
| --- | --- |
| 12AV6 | 99 Yen per tube, plus export pkg. chgs. at $1.575 per ctn. |
| 12BE6 | 130 " " " " " " " " " " " |
| 12BA6 | 130 " " " " " " " " " " " |
| 35W4 | 112 " " " " " " " " " " " |
| 50C5 | 172 " " " " " " " " " " " |

The importer appealed for reappraisement (R62/9215) against the basis of appraisement. The collector cross-appealed for reappraisement (R62/5795) against the the aforesaid unit values returned in the appraisement on the suggestion of the appraiser, who stated in Form 4371 that the appraised unit values were adopted through inadvertence.

The record before the single judge consisted of 34 affidavits, received in evidence on behalf of the importers, and 9 reports of Treasury agents and 4 affidavits received in evidence on behalf of the Government. The importers' exhibits were executed by persons connected with and representing various manufacturers, wholesalers, or dealers handling the Toshiba, N.E.C., and Kobe Kogyo tubes in the home market in Japan. In general, the affidavits in these exhibits purport to state restrictions or limitations by sellers to the various companies involved in the sale and distribution of the merchandise in the home market, omitting any reference to types and prices of tubes except in exhibits 4 and 5.

The information contained in the Government's exhibits also emanates from persons connected with and representing various distributors and wholesalers of and dealers in the Toshiba, N.E.C., and Kobe Kogyo tubes in the home market in Japan, some of which data being

supplied by the same people who signed affidavits on behalf of the importers. The Government's exhibits also furnish information concerning sales policies in the home market, and supply in some detail data concerning types and prices of tubes sold and offered for sale in the home market—reporting and averring the existence of restrictions and controls in some instances, and the absence of such restrictions and controls in other instances.

In addition, certain concessions and stipulations were made by the parties during trial, namely:

(1)   That, if the court finds foreign value to be the proper basis for appraisement, the following represent the correct dutiable foreign value of the several itemized tubes in appeal R62/5795 as defined by the statute:

Value (each)*

| 12AV6 | 315 Yen, less 50%, plus export packing |
| 12BE6 | 450 " " " " " " |
| 12BA6 | 380 " " " " " " |
| 35W4 | 365 " " " " " " |
| 50C5 | 600 " " " " " " |

(2)   That all tubes bearing the same description number are similar in all respects to any other tube bearing the same description number made by any other manufacturer in Japan.

(3)   That on or about the date of exportation of the merchandise herein involved such or similar merchandise was not freely offered for sale for export to the United States.

(4)   That on or about the date of exportation such or similar merchandise was not freely offered for sale in the principal markets of the United States.

(5)   That in the event the court finds there is no foreign value for such or similar merchandise, as defined in section 1402(c), then the cost of production, as defined in 19 U.S.C.A., section 1402(f) (section 402a(f), Tariff Act of 1930, as amended), is the proper basis of appraisal, and the cost of production is equal to the invoice prices, less ocean freight, in R61/21866 and to the unit invoice price, net packed, in reappraisements R62/9215 and R62/5795.

Additional facts and circumstances which were either established in the record or conceded by the parties before the single judge are that the subject radio tubes are on the final list of the Secretary of the Treasury, T.D. 54521; that during the period in question there were 13 manufacturers of electronic radio and television tubes in Japan, 10 of whom imposed restrictions and controls upon the distribution of their tubes which eliminated these products from consideration as a basis for a finding of foreign value; and that with respect to the remaining three manufacturers, namely, Toshiba, N.E.C., and Kobe

---

*Unit values the appraiser (Form 4371) intended to return for these tubes.

Kogyo Corp., initial restrictions in the distribution of their tubes precluded the existence of foreign value at the manufacturer's level. The issue thus presented to the single judge for resolution was whether a foreign value existed at the secondary level for tubes manufactured by Toshiba, N.E.C., and Kobe Kogyo.

The court below found that even if restrictions had been imposed at the secondary level in the home market, that such restrictions were not enforced to the extent that a controlled market existed, and further, that there was no one price at which all purchasers could buy the tubes involved herein in the home market. The court thereupon concluded that no foreign value existed for the subject tubes, and that the tubes were properly subject to appraisement on the basis of their cost of production values as stipulated by the parties.

Appellant contends that the single judge erred in not finding a foreign value on the basis of the stipulated values therefor, since he found from conflicting evidence on restrictions that the restrictions were not enforced to the extent that a controlled market existed, and further, that the single judge erred in disregarding the presumption of correctness attaching to the appraisement, when the court determined that the evidence failed to establish a single price at which the involved merchandise was offered to all purchasers in the home market. Appellees, on the other hand, contend that the home market for tubes was a restricted and controlled market, attacking the finding below to the contrary, and further, that there was no one price at which the involved tubes were offered to all purchasers in the home market, supporting the finding below to the same effect.

The pertinent statutory bases of value read as follows:

### Foreign value

(c) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

\*     \*     \*     \*     \*     \*     \*

### Cost of production

(f) For the purpose of this subtitle the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exporta-

tion of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

There is a jurisdictional question which we must rule on before we consider the substantive issue presented in the instant application, that is, whether we can allow appellees, over appellant's objection, to argue for and obtain a ruling on appellees' claim that the single judge erred in not finding the home market for tubes in Japan to be a restricted and controlled market, and whether we can find to the contrary. Appellees have briefed the point, and we permitted them to argue it orally, subject, however, to a ruling on the matter (R. 37).

Appellant contends that this court is without power to entertain appellees' argument for a finding of restrictions in the home market because appellees did not file an application for review and an assignment of errors covering the point. On the other hand, appellees, claim that it is the duty of this court to review not only the law, but the facts as well, and further, that until the Government sought a review of the judgment below, it would have been pointless for appellees to seek a review of judgment which was entirely favorable to them solely for the sake of obtaining a correction of the claimed error.

Any party who feels himself aggrieved by a judgment in a reappraisement appeal must comply with 28 U.S.C.A., section 2636(a), in order to be in a position to urge such grievance upon the reviewing court as a basis for affirmative relief from the judgment below. Applications for review of judgments in reappraisement appeals are a form of appeal, and as such, are governed by appellate procedures. And a nonappealing party in whose favor a judgment below has been rendered cannot obtain any relief on a claim of error which has not been sought by appropriate appeal. *Johnson Co.* v. *United States,*

13 Ct. Cust. Appls. 373, T.D. 41318; *United States* v. *Hensel, Bruckmann and Lorbacher, Inc.*, 6 Cust. Ct. 936, 938–939, Reap. Dec. 5244; *Casazza & Bro.* v. *United States*, 13 Ct. Cust. Appls. 627, T.D. 41481.

While it is true that this court has the duty to review both questions of law and fact in the judgment of the single judge, we are of the opinion that such duty is to be performed within the scope of an application for review as outlined in the assignment of errors. In the instant case, we see nothing in 28 U.S.C.A., section 2636(a), which would have prevented appellees from filing a cross-application for review in order to obtain a correction of error they claim to have been made by the single judge, when it became known to them that the Government was appealing. In fact, it seems implicit in the language of section 2636(a) that unless such cross-application were made by appellees, the ruling of the single judge complained of would become final and binding upon them.

Also, we are of the opinion that there is substantial evidence in the record to sustain the finding of the single judge concerning the absence of restrictions in the home market. At best, the evidence of the existence of restrictions in the home market is conflicting. And on the matter of implementation of such restrictions as may be shown to exist, we fully agree with the single judge that the attempted limitation of resale prices or geographical area in which tubes may be sold or the qualifications of the dealers to whom purchasers could resell without enforcement of such limitations would not amount to a controlled market under the holding in *United States* v. *Glanson Co.*, 47 CCPA 110, C.A.D. 740.

We turn now to the main issue which concerns us on the instant application, namely, whether there is any one price at which the tubes were freely offered for sale in the home market. It is incumbent upon the party attacking appraisement to rebut the presumption that all elements necessary to support such a determination exist in the values returned in the appraisement. That duty devolved herein upon the appellees in the first instance. Until the party attacking the appraisement introduces evidence tending to rebut such presumption of correctness, there is no duty on the part of the other party, the Government herein, to offer any evidence to support the appraisement. *United States* v. *Baar & Beards, Inc.*, 46 CCPA 92, C.A.D. 705. Even the collector's appeal herein is consistent with the presumption of correctness of the appraisement insofar as the basis of appraisement is concerned. He seeks only a change in the unit values in R62/5795, and the presumption of correctness of the basis and all other aspects of the appraisement remain undisturbed. *Cf. Kobe Import Co.* v. *United States*, 28 Cust. Ct. 586, Reap. Dec. 8102.

Appellees furnished the single judge with evidence indicative of the scope of the electronic tube industry in Japan during the relevant period (plaintiffs' exhibit 20), but did not introduce evidence indicative of the scope of the home market for such tubes. Only one of the exhibits offered by appellees before the single judge, exhibit 5, contained information from a dealer as to the prices and particular types of tubes which he handled. And he said he used the list only as a basis for bargaining.

Appellees' exhibits do not purport to indicate, either singly or collectively, what portion of the home market is represented there, or what are the principal markets. Counsel for appellees states in the brief (p. 24):

In order to complete the picture of the distribution of Toshiba tubes in Japan, affidavits were secured from several of the more important wholesalers, as well as from some of lesser importance who had been interviewed by Treasury Agents.

And again, on oral argument counsel for appellees states (R. 38):

. . . the whole record shows that the course of trade, the plan in Japan, initiated by the manufacturers, and carried through by the big distributors, was to control the distribution of radio tubes in Japan.

The reference of counsel in the brief to contact with less than all of the wholesalers of tubes in the Japanese home market is an admission that the total home market does not come within the scope of appellees' proofs. And in the absence of evidence of the tubes and prices moving in the channels of distribution with which appellees were in touch, counsel's reference to the distributors as being big in that segment of the home market must be treated as an expression of private opinion.

An examination of Government exhibits reveals prices and information concerning the imported tubes that correspond to the prices returned in the appraisement for these particular tubes. Thus, a comparison of prices in collective exhibit A (a report of foreign value of *similar* merchandise covering Kobe Kogyo tubes) with the appraiser's return as noted on the invoice of entry No. 463682 of R61/21866 shows the following:

OFFERED YEN PRICES SHOWN
IN COLLECTIVE EXHIBIT A

| Imported tube type | Shima Musen—Asahi Musen | | Yen prices shown in appraiser's return |
|---|---|---|---|
| 6C4 | 375 | | 375, packed |
| 12BH7A | | 200 | 200, " |
| 6J6 | | 250 | 250, " |
| 6U8 | | 280 | 280, " |
| 6BE6 | | 130 | 130, " |

With respect to the conditions underlying the Shima Musen prices noted above, the report of the interview with Shiuhei Kouki, sales manager, states:

He said that *he sells to anyone* at the lowest price appearing on Exhibit "B" which is a copy of the price list he maintains in his office. [Emphasis added.]

As for the conditions surrounding the Asahi Musen prices above noted, the report of the interview with Tatsuji Hirata, president and owner, states:

He said that he offered and sold the Kobe Kogyo tubes shown in Exhibit "A" at the prices shown therein. . . . He said that *any person could come into his shop and purchase tubes at those prices.* He had the one price for one or more tubes. . . . [Emphasis added.]

A comparison of prices in collective exhibit C (a report of foreign value of *similar* merchandise covering Kobe Kogyo tubes) with the appraiser's return as noted on the invoice of entry No. 772748 of R62/9215 and R62/5795 shows the following:

OFFERED YEN PRICES SHOWN IN COLLECTIVE
EXHIBIT C

| Imported tube type | Mikasa Musen—Asahi Musen | | Yen prices shown in appraiser's return |
|---|---|---|---|
| 12BE6 | | 130 | 130 per tube, etc. |
| 12BA6 | | 130 | 130 " " " |
| 12AV6 | 99 | | 99 " " " |
| 35W4 | 112 | | 112 " " " |
| 50C5 | 172 | | 172 " " " |

With respect to conditions underlying the above noted Asahi Musen prices, the report of the interview with the said Tatsuji Hirata, states:

. . . These tubes *he sells to anyone at the above prices,* net delivered buyer's premises. No discounts are granted. [Emphasis added.]

As to the conditions surrounding the Mikasa Musen prices above noted, the report of the interview with Yoshihisa Fujiwara, chief of the business section, states:

. . . He now maintains that this list has been in effect since January 1, 1961 and that to meet competition Mikasa has offered for sale and sold at the lowest prices appearing on the list—these being the ones shown in the first column.

And a comparison of prices in collective exhibit H (a report of foreign value of *such* merchandise covering N.E.C. tubes) with the appraiser's intended return of value for the tubes and said entry No. 772748 as noted in Customs Form 4371 shows the following:

## OFFERED YEN PRICES SHOWN IN COLLECTIVE EXHIBIT H

| Imported tube type | Yamagiwa Denki | Intended appraise-ment |
|---|---|---|
| 12BE6 | 450, less 50% | 450, less 50% + exp. |
| 12BA6 | 380, " " | 380, " " " " |
| 12AV6 | 315, " " | 315, " " " " |
| 35W4 | 365, " " | 365, " " " " |
| 50C5 | 600, " " | 600, " " " " |

With respect to conditions underlying the Yamagiwa Denki prices noted above, the report of the interview with S. Saito, chief, first sales unit, sales section, states:

Mr. Saito said that he is a distributor for NEC products and has no territory or price restrictions imposed upon him by NEC. He is free to sell to anyone. He sold at prices based on Exhibit "A" which is the price list he made available to me . . . . *He sells to anyone at 50% off*, . . . *price list.* [Emphasis added.]

In connection with entry No. 772748, although not stated as such, it is apparent that the overriding consideration which prompted the appraiser to seek to change the source and unit price in his return of values on this entry was his preference for evidence of the value of *such* merchandise (tubes of N.E.C. manufacture) over evidence of the value of *similar* merchandise (tubes of Kobe Kogyo manufacture), in keeping with the statutory order of precedence. (As previously mentioned herein, the tubes of entry No. 772748 were manufactured by N.E.C.)

It is clear from the foregoing Government exhibits that a plausible basis exists in the record for appraisement of the subject merchandise on the basis of a home market price. And to overcome such evidence as well as any other evidence on which the presumption favoring the appraisement might properly rest, the importers (the appellees herein) were put to their proof before the trial court. In determining the existence of a single price for the involved tube types the question of evidence predominates here as it did in the trial court. Parenthetically, it should here be pointed out that a number of exhibits, those offered by the Government as well as by the importers, added to the profusion of prices in the home market for the particular tubes here involved. Such, for example, is the character of affidavits and reports dealing with offers and sales of Toshiba tubes (exhibits 1–A, 1–B, 19, 25, 26, 27, 29, L, M, and collective exhibits D, E, F, and G). It is apparent from the record that the appraiser did not rely upon prices relating to Toshiba tubes. It is also apparent from one report, exhibit A, that Government agents were among the first to admit that sales and offers of Toshiba tubes did not offer a basis for foreign value appraisement.

And inasmuch as the record is barren of evidence of what percentage of the overall tube market is represented by offerings and sales of Toshiba tubes, evidence of sales and offers of Toshiba tubes should have been excluded from the equation in determining whether or not there existed in the home market a single free price to all purchasers. When the pertinent evidence is so reduced, the profusion of prices narrows down considerably to an area of particular prices giving support to the appraisement, and sought to be attacked by evidence introduced into the record by the importers below.

The record before the single judge indicates that the representations made in collective exhibits A, C, and H by the various tube dealers in the Japanese home market were, on subsequent dates and occasions, repudiated by these dealers, although no showing was made on any of these subsequent dates and occasions of actual prices or price levels at which said dealers sold or offered to sell Kobe Kogyo and N.E.C. tubes in the home market on a restricted and controlled basis. This is true of (1) the affidavit of Shojiro Horino of Shima Musen (exhibit 24) purporting to repudiate statements made as reported in collective exhibit A; (2) the affidavit of Tatsuji Hirata of Asahi Musen (exhibit 23) purporting to repudiate statements attributed to him as reported in collective exhibits A and C; (3) the affidavit of Yoshihisa Fujiwara of Mikasa Musen (exhibit 22) purporting to repudiate statements ascribed to him as reported in collective exhibit C; (4) the affidavit of Tomitaro Yamada of Mikasa Denki (exhibit 21) purporting to repudiate statements reported in collective exhibit C; (5) the affidavit of Seiroku Saito of Yamagiwa Denki (exhibit 31) purporting to repudiate statements attributed to him as reported in collective exhibit H; and (6) the affidavit of Y. Murayama of New Nippon (N.E.C.) (exhibit 28) purporting to repudiate statements reported in collective exhibit H.

The statements in the affidavits upon which the importers relied in attempting to repudiate statements attributed to their affiants in Treasury agents' reports were made approximately 2 years after interviews of their affiants by Treasury agents and contained no evidentiary facts of prices at which affiants offered for sale or sold their tubes, or any other facts upon which the conclusory statements in their affiants' affidavits could be based. Such uncorroborated conclusory statements have little probative value and do not offset evidentiary facts—pricelists supplied to the Treasury agents by the affiants and assertions attributed to them in the reports of Treasury agents that they offered for sale or sold to anyone interested in their merchandise at specifically determined prices. A bare statement in an affidavit, unsupported by evidence of offers or sales is a conclusion on the part of the affiant and

does not constitute substantial evidence to overcome the presumption of correctness attaching to the appraiser's finding of value. *Brooks Paper Company* v. *United States*, 40 CCPA 38, 43-44, C.A.D. 495; *United States* v. *Baar & Beards, Inc.*, 46 CCPA 92, C.A.D. 705.

One other matter is presented here for disposition in R62/5795 which was not required to be resolved below in view of the single judge's determination. It has to do with the proper interpretation to be placed upon the first of the stipulations entered into between the parties wherein the parties agreed to the particular unit value to be found if the court determined foreign value to be the correct basis of appraisement. Appellant interprets the stipulation to relieve it of the necessity of offering affirmative proof of all elements of foreign value, while appellees interpret the stipulation to require such proof. In a collector's appeal, the Government must establish every essential element in order to overcome the presumption of correctness of the appraisement which it attacks. *United States* v. *F. W. Myers & Co., Inc.*, 20 Cust. Ct. 382, Reap. Dec. 7539, affirmed, 24 Cust. Ct. 553, Reap. Dec. 7798. But the presumption of correctness of an appraisement is not destroyed as to elements of the appraisement which are not challenged by the attacking party. *Dunlap, Alpers & Mott, Faber, Coe & Gregg, Inc., Packer Bros* v. *United States*, 43 CCPA 159, C.A.D. 624, affirming 35 Cust. Ct. 446, A.R.D. 63. In other words, the attacking party may rely on the presumption to the extent that he agrees with it.

Such is the posture of the collector's appeal in R62/5795. The record discloses that the collector undertook the appeal only because the appraiser admits to having erred in returning the wrong unit values. And having made his appraisement, the appraiser was powerless to recall it for correction purposes. The court is entitled to make a finding of foreign value upon the basis of the statutory presumption of correctness as well as upon the basis of affirmative proof. And inasmuch as we have determined that foreign value exists by virtue of the former, there remains nothing else for this court to do but to give effect to the values stipulated by the parties, and we so hold.

On the record here presented, we find as facts:

1. That the merchandise consists of electronic tubes manufactured in and exported from Japan.

2. That radio receiving tubes such as or similar to those here involved appear on the final list compiled by the Secretary of the Treasury, T.D. 54521.

3. That the involved merchandise was appraised on the basis of foreign value under 19 U.S.C.A., section 1402(c) (section 402a(c), Tariff Act of 1930, as amended).

4. That by stipulation of the parties such or similar merchandise was not freely offered for sale for exportation to the United States, nor for sale nor sold in the principal markets of the United States for domestic consumption.

5. That there were 13 manufacturers of tubes in the country of exportation similar to the tubes here involved.

6. That similar tubes to those here involved manufactured by 10 of such 13 manufacturers were not freely offered for sale in Japan for home consumption at any level.

7. That similar tubes to those here involved manufactured by 3 of such 13 manufacturers, namely, Toshiba, N.E.C., and Kobe Kogyo Corp., were freely offered for sale in Japan for home consumption at the secondary level.

8. That by stipulation of the parties the correct dutiable foreign value of the several tubes described in reappraisement appeal R62/5795 is as follows:

| | | |
|---|---|---|
| 12AV6 | 315 | Yen, less 50%, plus export packing |
| 12BE6 | 450 | "  "  "  "  "  " |
| 12BA6 | 380 | "  "  "  "  "  " |
| 35W4 | 365 | "  "  "  "  "  " |
| 50C5 | 600 | "  "  "  "  "  " |

We, therefore, conclude as matters of law:

1. That appellees have failed to rebut the presumption of correctness attaching to the appraisement of the involved merchandise.

2. That foreign value, as defined in section 1402(c), is the proper basis for determining the value of the merchandise herein.

3. That such values are, in R62/5795 and R62/9215, the values found in finding of fact 8 above; and in R61/21866, the appraised values.

The judgment of the single judge is reversed.

Judgment will be entered accordingly.

### CONCURRING OPINION

Donlon, Judge: I concur that foreign value is the proper basis for valuing the merchandise at bar, that the foreign values of the merchandise of appeal R61/21866 are the appraised values, and that the foreign values of the merchandise of cross-appeal R62/5795 and R62/9215 are as stipulated.

I would add to Judge Richardson's opinion an observation as to the proofs of price in cross-appeals R62/5795 and R62/9215.

The single element of foreign value, as the basis of appraisement, which the trial judge found lacking in the proofs of record, was a uniform price to all. Judge Richardson rightly describes this as the main issue before us on review.

Discussing the various pricelists of record, the trial judge found that there was no one price at which electronic tubes, such as or similar to the tubes of the cross-appeals, could be purchased by all. Weighing the same evidence, Judge Richardson finds that there were such prices. I concur, for the reason that prices were stipulated.

Whether or not merchandise, either such or similar was or was not freely offered during the appropriate period of time, and in the usual wholesale quantities, and in the ordinary course of trade, are facts that were not stipulated. Plaintiffs rightly were put to their proofs as to those essentials of foreign value as the basis of appraisement. Prices, however, were stipulated. The parties agreed that the foreign values of the merchandise of the cross-appeals were stipulated prices, in each case "less 50%," to which export packing costs were to be added.

The same uniform market value, or price, which measures the *quantum* of foreign value is also, at least as here stipulated, the uniform market value or price that is an essential element for finding the foreign value as the basis for appraisement.