(R.D. 11555)

## Nichols & Company, Inc. v. United States

Entry Nos. 33875; 17688; 17.

(Decided June 27, 1968)

*Walter E. Doherty, Jr.,* for the plaintiff.

*Edwin L. Weisl, Jr.,* Assistant Attorney General (*Bernard J. Babb* and *Glenn E. Harris,* trial attorneys), for the defendant.

Donlon, Judge: Three appeals to reappraisement have been consolidated for purposes of trial. The merchandise at bar consists of synthetic fibers, variously described as nylon staple and acrylic staple, of differing deniers and weights, some first quality and some substandard, all manufactured in France, bought there from the manufacturer by plaintiff's commission merchant for plaintiff's account, and

imported at Boston in 1962. Although the documents show shipment from Bremen, both plaintiff and defendant agree that France is the country of exportation; and this is accepted as fact, there being no evidence that the merchandise entered into the commerce of West Germany while in transit there.

It was stipulated that the merchandise at bar is included in the Final List of the Secretary of the Treasury (T.D. 54521). Hence the merchandise is to be valued under the provisions of section 402a of the Tariff Act of 1930, without reference to amendment of valuation provisions in the Customs Simplification Act of 1956.

Appraisement was on the basis of foreign value. Plaintiff claims that there was no foreign value for the merchandise because it was not freely offered for sale in France for home consumption. What plaintiff claims is export value, and that the export value is the entered value.

The relevant provisions of the Tariff Act of 1930 are as follows:

Sec. 402a(c) : Foreign value. The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Sec. 402a(d) : Export value. The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Plaintiff's first burden of proof is to negate the existence of foreign value, found by the appraiser. It is presumed that the appraiser found all the conditions basic to such value.

Essentially plaintiff's case rests on certain uncontroverted testimony that the merchandise was bought from Rhodiaceta Cie., of Lyon, in France; that Rhodiaceta is a member of a large chemical group, or cartel, known as Rhone Poulene; that Crylor Societe is also a member of that group; that Crylor is the sole manufacturer in France of acrylic fiber; that Rhodiaceta was the seller in France of the merchandise manufactured by Crylor; and that Rhodiaceta offered for sale and sold

such merchandise for home consumption in France only to those purchasers who agreed that the fibers would be processed and that they would not be resold in France as fibers.

Is this limitation on French purchasers of the fibers such a restriction as to negate the free offerings that the statute requires as an essential element of foreign value? Plaintiff cites, in its brief, several cases in support of its argument that the proven restriction precludes a finding that here there were no such free offerings for domestic consumption in France as would be necessary to support a holding that appraisement at foreign value is proper.

In *United States* v. *Hensel, Bruckman & Lorbacher, Inc.*, 7 Cust. Ct. 355, R.D. 5329, an early case in point, the appellate division in its opinion said:

From a careful consideration of the evidence submitted before the court below including all of the exhibits admitted therein, we are of the opinion that * * * the uncontradicted evidence fully supports the contention of the importer that sales in the home market of such paper were controlled and restricted from their source right down to the use applied thereto by the consumer and that such control prevailed whether or not the merchandise was sold to dealers and consumers who were members of the association, or to firms which were not members although upon the approved list of firms of the Association for Aluminum Metal Covered Paper; that inasmuch as "A resale of the foils by the customer is forbidden," it is immaterial whether or not sales were made to dealers not members of the association, whether on the approved list or not; that exhibits 21 to 27 inclusive, admitted in evidence by the trial court over objection of Government counsel, present substantial evidence of a controlled foreign market covering the wholesale trade in aluminum metal covered paper and in our opinion were properly admitted.

Inasmuch as there is ample proof of a controlled market in Germany the finding of foreign value by the appraiser is clearly erroneous and should be reversed upon proof that the export prices of such paper should prevail. * * * [P. 357.]

In the *Hensel* case the evidence of a controlled market, offered by plantiff and uncontradicted, was that aluminum metal covered paper, such as or similar to the merchandise there at bar, was controlled by the Convention of Aluminium Covered Paper which embraced all of the manufacturers of such paper in Germany, and that control was carried to the distribution and use of such paper and the exaction of penalties for violation.

Defendant argues that, even if plaintiff's proofs suffice to show that domestic sales in France contained a restriction against resale as fibers, plaintiff's proofs fail to show the effective enforcement of such restriction and that such proof of effective enforcement is necessary in order to support a holding that the foreign market was restricted. As au-

thority for this argument, defendant cites a single precedent, *United States* v. *Daystrom, Inc., et al.*, 56 Cust. Ct. 769, A.R.D. 203, which was affirmed in *Daystrom, Inc., et al.* v. *United States*, 54 CCPA 111, C.A.D. 920. It is necessary, therefore, to consider what were the proofs before the court in *Daystrom*, and what were the findings and conclusions of law in that case as to a restricted foreign market.

There was extensive evidence before the court in *Daystrom*, introduced by both of the adversary parties. It seems not to have been disputed that these proofs sufficed to establish that there were such use or resale restrictions or limitations of sales to selected purchasers in the domestic market (Japan) as to negate the existence of any foreign value as to goods bought from 10 out of 13 manufacturers whose products were before the court; and that, as to the remaining three manufacturers, the proofs sufficed to negate the existence of foreign value in the primary market. The issue thus was narrowed down to whether the proofs before the court showed restrictions on sales in the secondary Japanese market as to the latter three manufacturers, so as to preclude a finding that there were free sales and offers to sell by them in that secondary market.

The trial judge, in his opinion, said:

The evidence adduced by the importer attempts to establish that there are restrictions imposed at the secondary level which would eliminate foreign value. These restrictions relate to control of the resale price or the geographical area in which the tubes may be sold or the qualifications of the dealers to whom they may sell. In at least one instance, a copy of an agreement was attached to an affidavit received in evidence as plaintiffs' exhibit 4, wherein specific restrictions were imposed. The evidence adduced by the Government on the other hand in both its reports and affidavits, wherein various distributors at the secondary level were interviewed, tends to negate the imposition of restrictions. However, even if I were to consider the question of the imposition of restrictions, it would appear that enforcement of these restrictions was such as would bring this case under the principles set forth in *United States* v. *Glanson Co.*, 47 CCPA 110, C.A.D. 740, wherein suggested resale prices did not compel resale at these prices and did not amount to a controlled market. Similarly, in the case at bar, the evidence tends to satisfactorily establish that the so-called restrictions were not enforced to the extent that a controlled market existed. [*Daystrom, Inc., et al.* v. *United States*, 53 Cust. Ct. 447, Reap. Dec. 10834, at pp. 451, 452.]

The nub of that holding is found in evaluation of the evidence on which the trial judge found that "it would appear that enforcement of these restrictions was such as would bring this case" within the rule of *United States* v. *Glanson Co.*, 47 CCPA 110, C.A.D. 740.

The restrictions litigated in *Glanson* were suggested resale prices. Our appeals court succinctly set forth the evidence on that issue in its opinion, as follows:

The only evidence [as to restriction on resale prices] * * * was an affidavit of P. Roug-Jensen, plant manager of the manufacturer and exporter of the instant merchandise, in which he stated that the manufacturer suggested to purchasers the prices at which the merchandise was to be resold and that "upon information and belief" the boards were resold at those prices. In our opinion, those statements do not provide support for a finding that there was a controlled market. Even assuming that the allegation based on information and belief can be accepted as establishing the facts alleged, there is still nothing to show that resale at the suggested prices was anything other than voluntary.

The above comments are equally applicable to an affidavit of record by W. Elliot Thomas, the departmental manager of a Canadian firm which purchased boards from the manaufacturer of the merchandise here involved. Like Roug-Jensen, Thomas referred to the prices "suggested" by the manufacturer, and although he stated that his firm resold at those prices, he gave no indication that they were in any way compelled to do so or that they could not have continued to purchase boards if they had resold at any other price.

The record also contains a report of a United States Customs Agent in Canada to the effect that seven Canadian purchasers of the boards were interviewed and that all of them stated they knew of no restriction imposed by the manufacturer relating to resale. [Pp. 112, 113.]

Thus, there was evidence introduced by defendant in the *Glanson* case, the report of a Customs Agent, contradicting plaintiff's evidence as to restricted sales. Similarly, in *Daystrom*, defendant introduced evidence which, as the trial judge observed, brought the facts there within the *Glanson* precedent.

Here the record is quite different. Plaintiff has introduced uncontradicted evidence that the French monopoly group for acrylic fibers sold and offered to sell in the domestic market only subject to a resale restriction. Defendant introduced no evidence whatsoever. Instead, defendant asserts, citing *Daystrom* and *Glanson*, that plaintiff has the burden of proving effective enforcement of its resale restriction.

But that was not the situation before the court in either *Glanson* or *Daystrom*. In both, there was conflicting evidence which the court, quite rightly, found it necessary to evaluate.

Here the undisputed evidence shows that the French monopoly cartel in acrylic fibers uniformly limited its sales and offers to sell in the domestic market by restricting the right of purchasers to resell in that market. It is too well known to require comment, that a monopoly is uniquely able to restrict markets. Absent any proof that this monopoly, a monopoly which French law recognizes, disregarded its own uniformly exacted limitation of which there is proof by testimony, there is here no such conflicting evidence as requires evaluation under the precedents on which defendant relies. Whatever defendant might

have proven, sufficient to overcome the *prima facie* case plaintiff has made, the fact is that defendant introduced no proofs.

Plaintiff's proofs having been found to negate the existence of a foreign value for the merchandise at bar, the next statutory basis for appraisement is export value. That is the value that plaintiff claims and—other than insistence on foreign value—defendant does not argue against export value as the basis of appraisement. Defendant does argue that plaintiff's proofs do not suffice to find an export value.

What defendant chiefly argues, as to proof of the amount of export value, is that the invoice prices, paid by plaintiff, do "not suffice to establish the *positive* element of plaintiff's burden of proof, viz that such or similar merchandise was *freely offered for sale to all purchasers* at the prices negotiated with plaintiff." (Def. brief, p. 9; emphasis quoted.)

The official papers are in evidence. These papers include the special customs invoices in each of the three entries. The statements required to be made in section V appear to be complete. They include the following statements:

4. \* \* \*

   \*      \*      \*      \*      \*      \*      \*

(B)   (1)   Have you stated in section IV, column 7, the price at which you are now selling the goods or offering them for sale for export to the United States and whether this price is f.o.b., c.i.f., c. & f., or whatever the fact may be? ☒ Yes ☐ No

      (2)   Is this price freely offered to anyone who wishes to buy the goods for export to the United States? ☒ Yes ☐ No

The customs invoices, including the above quoted matter, are signed by Chemfa, of Bremen, West Germany, representing itself as the seller of the merchandise. The probative force of invoices has been considered judicially. As the opinion states in *United States* v. *Bloomingdale Bros. & Co.*, 10 Ct. Cust. Appls. 149, T.D. 38400:

We must conclude, therefore, that customs laws have always contemplated that invoices in due form made in accordance with statutory requirements and not discredited or impeached were, in the absence of other proof, admissible as some evidence of the facts stated therein, and that the administrative practice and the judicial tribunals have conformed to that interpretation. \* \* \* [P. 154.]

Absent contradiction or rebuttal evidence, the invoice statements might suffice to make a *prima facie* case that the invoice prices are the freely offered prices for the merchandise to anyone who wishes to buy the goods in West Germany from Chemfa for export to the United States. What is difficult to follow, is plaintiff's argument that these

statements in the customs invoice supply the necessary proof as to prices at which Rhodiaceta freely offered the merchandise in France for export to the United States. The thrust of plaintiff's case is that France is the country of exportation and that Rhodiaceta was the seller. Plaintiff's proofs show Chemfa as plaintiff's affiliate, acting in the transactions in a capacity roughly comparable to that of plaintiff's commission merchant. Plaintiff's difficulty is that the facts stated in the invoices are facts as to Chemfa's sales to plaintiff in Germany. The invoice statements have no relevance to free offerings by Rhodiaceta in France for export to the United States.

Finally, plaintiff argues that it must be given opportunity to remedy this defect in its proofs. That is not the law. Plaintiff has had its day in court, has rested and submitted its case for decision on the proofs it adduced.

The situation is that plaintiff has established that the merchandise at bar should be valued on the basis of export value, but it has failed to prove an export value different from the value found by the appraiser. There is a twofold presumption of correctness as to the appraiser's findings: as to basis, and as to amount. Plaintiff has overcome the presumption as to the first, the basis for appraisement. Plaintiff has adduced no proofs as to export value in the *French* market. Hence, the presumption of correctness, as to the appraiser's finding of the amount of value, has not been overcome.

I find as facts:

1. That the merchandise consists of synthetic fibers, of differing deniers, weights and quality.

2. That the merchandise was manufactured in France and was bought there from the manufacturer by plaintiff's commission merchant for plaintiff's account.

3. That the merchandise was exported from France and imported at Boston in 1962.

4. That the merchandise is included in the Final List of the Secretary of the Treasury (T.D. 54521).

5. That appraisement was on the basis of foreign value under section 402a(c) of the Tariff Act of 1930, as renumbered by the Customs Simplification Act of 1956.

6. That the merchandise was bought from Rhodiaceta Cie. of Lyon, France, the sole seller in France of merchandise manufactured by Crylor Societe, the exclusive manufacturer of acrylic fiber in France.

7. That Rhodiaceta Cie. and Crylor Societe were members of a group, or cartel, known as Rhone Poulene, which sold and offered to sell its merchandise in the domestic market in France only subject to certain resale restrictions.

8. That Rhodiaceta, as a member of the French monopoly group for acrylic fibers, offered for sale and sold such merchandise as the fibers

at bar for home consumption in France only to purchasers who agreed that the fibers would be processed and would not be resold in France as fibers.

I conclude as a matter of law:

1. That the basis for valuation of the merchandise at bar is export value in France.

2. That the facts established by plaintiff's proofs fail to overcome the presumption of correctness which attaches to the appraised value.

3. That the appraised value is the dutiable value of the merchandise.

Judgment will be entered accordingly.