59 CCPA

**NICHOLS & COMPANY, Inc., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5426.**

United States Court of Customs
and Patent Appeals.

Feb. 17, 1972.

Worley, C. J., took no part in the decision.

Walter E. Doherty, Jr., Boston, Mass., atty. of record, for appellant.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Martin L. Rothstein, New York City, for the United States.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

RICH, Judge.

This appeal is from a judgment of the Third Division, Appellate Term, of the United States Customs Court, 64 Cust. Ct. 849, A.R.D. 271 (1970), affirming the judgment of a single judge sitting in reappraisement, 60 Cust.Ct. 917, R.D. 11555 (1968). We affirm.

The imports were nylon and acrylic staple fibers manufactured in France, bought in France by appellant's commission merchant (a West German concern), resold to appellant, and shipped from Holland. The parties agree that France was the country of exportation. They have stipulated that the merchandise at bar was included in the Final List of the Secretary of the Treasury, T.D. 54521 (1958), which fact requires that the merchandise be valued under the provisions of section 402a of the Tariff Act of 1930 (19 U.S.C. § 1402) without reference to amendment of valuation provisions in the Customs Simplification Act of 1956. Appraisal was on the basis of foreign value, 19 U.S.C. §

1402(c),[1] and appellant claims export value, 19 U.S.C. § 1402(d).[2]

The single judge (Judge Mary H. Donlon) held that appellant's proofs had negated the existence of statutory foreign values "for the merchandise at bar" because there was no free market for it in France at that time. Nevertheless, she held that the merchandise would have to be dutied on the foreign values found, even though foreign value was not the proper basis for appraisal, because plaintiff had only proved the prices for the merchandise when freely offered for exportation to the United States by appellant's commission merchant in West Germany, not the prices at which such merchandise was freely offered *in France* for exportation to the United States. In response to appellant's contention that "it must be given opportunity to remedy this defect in its proofs," the single judge held that "Plaintiff has had its day in court, has rested and submitted its case for decision on the proofs it adduced."

The Appellate Term affirmed the judgment of the single judge, but employed a wholly different rationale to arrive at the same result. According to it, the single judge found only that there were no statutory foreign values for "such" merchandise but did not find, and plaintiff did not prove, that there were no statutory foreign values for "similar" merchandise. Since the Appellate Term held that appellant had failed to negate the existence of a statutory foreign value for "similar" merchandise, it did not reach the question of export value. In response to appellant's contention that the Government was precluded from arguing that foreign value was, after all, the proper basis for appraisement because of its failure to file a cross application for review, the Appellate Term held that appellant's assignment of error number 5[3] "operates to put the whole spectrum of elements entering into foreign value squarely before us for review owing to the fact that the appraised values were predicated on foreign value."

Appellant argues: (1) (a) that, since the Government did not file a cross application for review, the Appellate Term "had no right or authority"—i. e., no jurisdiction—to revert to the basis for appraisal rejected by the single judge because "The Government * * * cannot obtain a more favorable judgment than what was entered by the trial court." Appellant cites numerous cases in support of that proposition. It argues that the Appellate Term's construction of its assignment of error number 5 was too broad because it was not trying to appeal from the single judge's findings insofar as they were in its favor and that the Appellate Term's construction of the trial judge's holding concerning foreign value was too narrow

1. (c) Foreign Value.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

2. (d) Export Value.—The export value of imported merchandise shall be the mar- ket value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

3. "5. The trial judge erred in finding that the plaintiff's proofs failed to overcome the presumption of correctness attaching to the appraised values."

because she clearly intended to find that appellant had disproved the existence of statutory foreign value both for "such" and for "similar" merchandise. (1) (b) As to the merits of the Appellate Term's holding, appellant argues that it *did* disprove the existence of statutory foreign values both for "such" and for "similar" merchandise. (2) As to the merits of the single judge's holding, appellant argues that its West German commission merchant acted only as a conduit in this sale, buying and selling the merchandise at bar at the same price, that the French seller was well aware that the German intermediary was just a conduit for a United States consignee, and that it has therefore really proved the price at which "such" merchandise was freely offered *in France* for export to the United States. Additionally, appellant argues that, if its proofs on point (2) were insufficient, the trial judge erred in failing to restore the case to the docket for the taking of additional evidence as to "the proper statutory basis" (which appellant obviously assumes to be export value) because

> As noted in Goodyear Tire and Rubber Co. v. United States, TD 39158, 11 Ct.Cust.Appls. 351 (1922), where there is proof of a controlled market negating foreign value, it is mandatory to proceed to a different statutory basis for "inasmuch as the appraisement was made on a wrong principle, and not as prescribed by law, it is void."

The Government argues as to point (1) (a) that, since the judgment of the single judge was for the appraised values, "The Government could not have been said to have been aggrieved by that decision so as to have properly filed an appeal," but that, "An appeal having been taken by the importer, the Government was not thereby foreclosed from having its appraised values sustained on

a ground other than that determined by the trial court." Such a judgment, the Government argues, citing Randolph Rand Corp. v. United States, 53 CCPA 24, C.A.D. 871 (1966), "cannot be considered as a 'better judgment' than the Government had before." Additionally, the Government argues that, since

> The presumption of correctness attaching to the appraised values necessarily included the presumption that the Appraiser found *every fact* to exist necessary to sustain the existence of the *foreign value* basis on which the appraisement was predicated [cases cited] * * *, appellant's assignment of error to the trial judge's finding that the presumption of correctness of the appraised values had not been overcome, necessarily placed the whole spectrum of elements entering into foreign value before the Appellate Term for review.

As to point (1) (b), the Government argues that appellant did not disprove the existence of statutory foreign values for *either* "such" or "similar" goods. As to point (2), the Government adopts the single judge's rationale, including her refusal to restore the case to the docket for the taking of further evidence, and further argues that appellant purchased the seller's entire output of this merchandise during the relevant time period and that there is no evidence that the same prices would have been "freely offered" to others.

### OPINION

### *(1) (a) The Appellate Term's Authority to Revert to Foreign Value*

■■■■ We agree with appellee that it may reargue before the Appellate Term rationales which would support the judgment obtained below other than the specific one adopted by the single judge.[4] Appeals are from the *judgment*

---

4. We note that the Government is also arguing here for affirmance of the judgment in its favor on a rationale not adopted below by *either* the single judge or

the Appellate Term, namely, that appellant did not even disprove the existence of statutory foreign values for "such" merchandise. We see nothing wrong

of the lower court, not from something that the lower court said in its opinion to justify its decision. Cf. Dunlap & Co. v. Bettmann-Dunlap Co., 57 U.S.App. D.C. 351, 23 F.2d 772 (1927). An affirmance obtained on a rationale different from the one adopted by the lower tribunal is not a "better judgment" within the meaning of the cases cited by appellant; it is in fact the *same* judgment. Thus we conclude that the Appellate Term did have authority to "revert" to the basis for appraisal rejected by the single judge.

### (1) (b) *Existence of Foreign Value for "Similar" Merchandise*

■■ Assuming for the purpose of this opinion that appellant proved that "such" merchandise was not freely offered in France for home consumption during the relevant period, appellant still had to prove that "similar" merchandise was not so offered. United States v. F. Vietor & Achelis, 16 Ct. Cust.App. 122, T.D. 42767 (1928). In this it failed completely. It is true that one of appellant's witnesses testified that the French company which manufactured the instant merchandise manufactured "Nylon, acrylic, and other fibers," that said company was "the only company in France that was so engaged" at the time of this exportation, that it was the practice of that company "to sell merchandise *similar* to the merchandise at bar by way of oral contract," and that "the only people * * * [the French seller of the in-stant importations] could sell to in France in 1962 were those people who were going to transpose the merchandise at bar, or the merchandise *similar* to that at bar." (Emphasis ours.) However, the word "similar" has a very specific and slightly out of the ordinary meaning in this context in customs law,[5] and there is nothing in the record to suggest that the witness, who testified through an interpreter most of the time, understood the term in the sense that it is used in the statute. Furthermore, he was in charge of exports and was not shown to have knowledge of selling practices with respect to French customers. Other than the above isolated lay references to "similar" merchandise, the record is remarkably devoid of evidence concerning what if any merchandise was "similar" in the statutory sense to the importations at bar at the relevant time and in the relevant place, let alone whether or not a statutory foreign value existed for such merchandise. Accordingly, we agree with the Appellate Term that appellant failed to negate the existence of a French foreign value for "similar" merchandise, and we therefore have no occasion to review the single judge's determination on the question of export value. We need not, therefore, discuss point (2), supra.

The judgment of the Customs Court is affirmed.

Affirmed.

WORLEY, C. J., took no part in the decision of this case.

with this, so long as the Government made this argument below, and appellant has not argued that it did not. Cf. the following two cases dealing with a similar problem on the patent side of our jurisdiction: Kratz v. Calvert, 29 CCPA 1097, 1103, 129 F.2d 542, 546 (1942), and Fageol v. Midboe, 19 CCPA 1117, 56 F.2d 867 (1932), particularly the con-curring opinion by Judge Lenroot in the latter.

5. See, e. g., the discussion of this word as it is used in 19 U.S.C. 1336 contained in A. Zerkowitz & Co. v. United States, 58 CCPA 60, 65–68, 435 F.2d 576, 580–582, C.A.D. 1005 (1970).