NICHOLS & COMPANY, INC.

v.

UNITED STATES.

C.D. 4734; Court Nos. R65/11409, etc.

United States Customs Court.

Feb. 3, 1978.

Doherty & Melahn, Boston, Mass. (William E. Melahn, Boston, Mass., of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Saul Davis, Trial Atty., New York City, for defendant.

RE, Chief Judge:

In this action for the reappraisement of imported merchandise both parties have moved for summary judgment pursuant to Rule 8.2(a) of this court.[1] The defendant has also moved for severance.

It is undisputed that the facts are identical to those of the test case under which the present action was suspended, *Nichols & Company, Inc. v. United States,* 60 Cust.Ct. 917, R.D. 11555 (1968), *aff'd,* 64 Cust.Ct. 849, A.R.D. 271 (1970), *aff'd,* 454 F.2d 1183, 59 CCPA 67, C.A.D. 1041 (1972). The imported merchandise in both cases consists of nylon staple fibers, substandard acrylic staple fibers and first grade acrylic staple fibers. The parties have stipulated that the merchandise was included in the Final List of the Secretary of the Treasury, T.D. 54521 (1958).

In both actions the fibers were appraised on the basis of foreign value, pursuant to section 402a(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.[2] In the test case, and in this

---

1. Rule 8.2(a) provides:

"(a) Motion; Time for Filing: Subject to the provisions of paragraph (c) of this rule, a party may, at any time after a responsive pleading has been filed, move with or without supporting affidavits for a summary judgment in his favor upon all or any part of the action."

2. Section 402a(c) of the Tariff Act of 1930, as amended, reads in pertinent part:

"(c) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quan-

action, plaintiff has contended that the proper valuation is export value pursuant to section 402a(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.[3] In the present case plaintiff has also asserted the alternative claim of United States value, pursuant to section 402a(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.[4]

As in the test case of *Nichols & Company, Inc.*, all three types of fibers were manufactured in France by Société Crylor, a member of a chemical group known as Rhone Poulenc. The fibers were sold by Rhodiaceta, the general sales agent for that group, to the West German firm of Chemfa, 80% of which is owned by Nichols & Company, Inc. Chemfa resold the merchandise to Nichols who shipped it from Bremen and Rotterdam. Rhodiaceta did not sell directly to the United States, and, therefore, could not deal directly with Nichols. Negotiations for the sales contract, however, under which all shipments of the fibers were made, included a representative of Nichols. It was understood by all parties that the fibers were to be exported to Nichols. At the time of exportation of the merchandise,

French law permitted the sale of fibers only on the condition that they not be resold in the French market as fibers.

In the test case, as well as in the case at bar, the country of exportation was stipulated to be France. On these facts in the test case, based on the absence of a free market in France for the imported merchandise, the trial court found that plaintiff had overcome the presumption of correctness[5] as to the foreign value basis of appraisement. The court also found that plaintiff had succeeded in establishing that export value was the proper basis of appraisement. However, since plaintiff had not introduced evidence as to export value in the French market, the presumption of correctness that attached to the appraiser's finding of the amount of value was not overcome.

That the valuation issue had been presented, tried and determined may be gleaned from the specific references in the decision of the trial court to the evidentiary value of invoice statements. The trial court stated that it found plaintiff's argument "difficult to follow," and rejected plaintiff's

tities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States."

3. Export value is defined in section 402a(d) of the Tariff Act of 1930, as amended, as:

"(d) The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States."

4. United States value is defined in section 402a(e) of the Tariff Act of 1930, as amended, as:

"(e) The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely of-

fered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods."

5. The presumption of correctness, codified in 28 U.S.C. § 2635, has been interpreted to mean that the appraiser found every fact necessary to sustain the appraisement. The importer, therefore, must carry a dual burden: he must prove that the appraiser's calculation was erroneous, and also establish the claimed value as the correct dutiable value of the merchandise. *Dana Perfumes Corp. v. United States*, 524 F.2d 750, 63 CCPA 43, C.A.D. 1162 (1975); *Millmaster International Inc. v. United States*, 427 F.2d 811, 57 CCPA 108, C.A.D. 987 (1970).

request that it be given an opportunity "to remedy this defect in its proofs." 60 Cust.Ct. at 922–23. Prophetically, the trial court write that "[p]laintiff has had its day in court, has rested and submitted its case for decision on the proofs it adduced." To dispel any doubt the trial court explained:

"The situation is that plaintiff has established that the merchandise at bar should be valued on the basis of export value, but it has failed to prove an export value different from the value found by the appraiser. There is a twofold presumption of correctness as to the appraiser's findings: as to basis, and as to amount. Plaintiff has overcome the presumption as to the first, the basis for appraisement. Plaintiff has adduced no proofs as to export value in the *French* market. Hence, the presumption of correctness, as to the appraiser's finding of the amount of value, has not been overcome." 60 Cust.Ct. at 923.

The Appellate Term of this court affirmed. It expressly passed upon the evidence presented in the trial court on the question of value, and held that the importer failed to rebut the presumption of correctness. In holding that Nichols had not established the absence of a foreign statutory value for "similar" merchandise as required under section 402a(c) of the Tariff Act of 1930, as amended, it stated:

"The presumption of correctness obtaining in this case with respect to the appraisement is that the appraiser found every fact to exist which is necessary to sustain the existence of a foreign value. And the burden of proof is on appellant to rebut this presumption of correctness before undertaking to establish another value for the merchandise at bar." 64 Cust.Ct. at 855.

The Court of Customs and Patent Appeals affirmed.

Relying upon the test case, the defendant has moved for summary judgment contending that the valuation issue in both cases is the same in all material respects. It is the defendant's position that the issue of valuation was previously litigated to a valid final judgment against the same plaintiff in the test case. It therefore urges that plaintiff should be collaterally estopped from relitigating it. The defendant further contends that United States value, as an alternative claim, does not preclude the application of the doctrine of collateral estoppel. It argues that plaintiff would also have to negate any foreign or export value for such or similar merchandise before the court examine the applicability of the United States value claim.

Plaintiff opposes defendant's motion for summary judgment on the ground that the liberal discovery rules of the United States Customs Court enacted in 1970 constitute an intervening change in the controlling law which renders the doctrine of collateral estoppel inapplicable. Plaintiff also maintains that the valuation decision in the test case was not a final judgment on the merits which would warrant the application of the doctrine of collateral estoppel. Finally, plaintiff asserts that since the defendant withheld material evidence in the original *Nichols* case, it should not be permitted to invoke collateral estoppel.

Before reaching the merits of the defendant's motion for summary judgment, and the question of collateral estoppel, the court will consider the defendant's motion for severance. Some confusion has been caused by the fact that the scheduled appeals for reappraisement, which defendant seeks to sever, were never consolidated with consolidated case number R65/11409, the case at bar.[6] These cases are part of consolidated case number R66/493, which was suspended under the test case. Moreover, the defendant has listed in the schedule appended to its motion papers consolidated case number R67/16854, another case which was not previously consolidated with R65/11409, but which was also suspended under the test case.

■ Since all three consolidated cases, R65/11409, R66/493 and R67/16854, were suspended under the same test case pursu-

---

6. Defendant's failure to consolidate these cases has not been raised by plaintiff.

ant to Rule 14.7(a),[7] it is clear that they were all found to involve the same issues of fact or law as in the test case. Thus, the "common question of law or fact" which is necessary for consolidation pursuant to Rule 10.3(a)[8] has been satisfied. In view of the requisite common question of law or fact existing in these cases, the court consolidates, *sua sponte,* case numbers R66/493 and R67/16854 under case number R65/11409.[9]

■ Defendant seeks severance of those reappraisement cases[10] with dates of exportation in 1963 and 1965. Defendant contends that it is proper to sever those cases since the valuation question in the motion for summary judgment pertains to merchandise exported during 1962. Since the "time of exportation" of the merchandise is crucial in considering proper valuation under foreign value, export value or United States value, defendant's motion to sever and renumber is granted.

The defendant's motion for summary judgment raises the question of the applicability of the doctrine of collateral estoppel in customs litigation.

Collateral estoppel, or estoppel by judgment, is related to the doctrine of *res judicata.* Although *res judicata* shields a litigant from multiple suits and vexatious litigation, primarily it fosters the public policy which puts an end to litigation and promotes stability in human relations. The doctrine is of ancient origin and finds expression in the latin maxim "*interest reipublicae ut sit finis litium,*" meaning that it is in the public interest that there be an end to litigation.

■ As indicated by the Supreme Court of the United States in *Commissioner v. Sunnen,* 333 U.S. 591, 596–97, 68 S.Ct. 715, 92 L.Ed. 898 (1948), *res judicata* prevents relitigation in a subsequent action between the same parties, or their privies, of questions or issues which were actually litigated or could have been litigated in the prior action, if the prior action resulted in a final judgment on the merits. In contrast, a prior judgment between the same parties based on a different claim or cause of action may invoke the doctrine of collateral estoppel. Unlike *res judicata,* collateral estoppel precludes a relitigation in the second action of only those issues which were actually litigated in the prior action, but not those which might have been litigated. *Commissioner v. Sunnen,* 333 U.S. at 598, 68 S.Ct. 715.

Since a party may be precluded· from relitigating an issue, the *Restatement of the Law of Judgments* describes collateral estoppel under the heading of "issue preclusion." If the second action is based on the same claim as the first, the issue preclusion is sometimes called direct estoppel, whereas if it is on a different claim, it is referred to as collateral estoppel. In a recent proposed draft, the *Restatement* describes the doctrine as follows:

"§ 68   Issue Preclusion—General Rule

---

7. Rule 14.7(a) reads, in pertinent part:
    "(a) Suspension of Actions: An action may be suspended pending the final determination of another action (hereinafter referred to as a test case) if it involves an issue of fact or a question of law which is the same as the issue of fact or question of law involved in such test case."

8. Rule 10.3(a) states:
    "(a) Consolidation: When actions involving a common question of law or fact are pending before the court, and the parties are the same, the court may order consolidation of the actions or any claims therein."

9. The fibers which are the subject of consolidated court nos. R66/493 and R67/16854 are the same as those involved in R65/11409.

R66/493 as it was initially consolidated, included sixteen appeals for reappraisement, all involving nylon staple fibers, while R67/16854 contained thirteen appeals for reappraisement all of first quality acrylic fibers. Both the nylon staple fibers in the R66/493 case and the first quality acrylic fibers in R67/16854 were appraised by the Bureau of Customs (now known as the Customs Service) at the same rates as the identical fibers were appraised in R65/11409.

10. The court nos. which defendant seeks to sever are: R66/501; R66/502; R66/503; R66/591; R66/592; R66/593; R66/594; and R66/595. Defendant has asked that these be renumbered as consolidated court no. R66/501.

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Restatement (Second) of Judgments*, § 68 at 1 (Tentative Draft No. 4, 1977).

In customs litigation the application of the doctrine of collateral estoppel has depended upon whether the case pertained to the classification or the reappraisement of imported merchandise. Because of the particular problems inherent in classification litigation, collateral estoppel has been held to be inapplicable in classification cases. In the seminal case of *United States v. Stone & Downer Co.*, 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013 (1927), the Supreme Court held that a decision of the Court of Customs Appeals on the classification of imported merchandise was not determinative of a later importation of the same type merchandise by the same importer, even though the issues were the same.

In *Stone & Downer*, the court explained as follows the reasons which justified limiting the finality of the conclusion in customs classification cases to the identical importation:

"The evidence which may be presented in one case may be much varied in the next. The importance of a classification and its far-reaching effect may not have been fully understood or clearly known when the first litigation was carried through. One large importing house may secure a judgment in its favor from the Customs Court on a question of fact as to the merchandise of a particular importation, or a question of construction in the classifying statute. If that house can rely upon a conclusion in early litigation as one which is to remain final as to it, and not to be reheard in any way, while a similar importation made by another importing house may be tried and heard and a different conclusion reached, a most embarrassing situation is presented. The importing house which has, by the princi-

ple of the thing adjudged, obtained a favorable decision permanently binding on the Government will be able to import the goods at a much better rate than that enjoyed by other importing houses, its competitors. Such a result would lead to inequality in the administration of the customs law, to discrimination and to great injustice and confusion. In the same way, if the first decision were against a large importing house, and its competitors instituted subsequent litigation on the same issues, with new evidence or without it, and succeeded in securing a different conclusion, the first litigant, bound by the judgment against it in favor of the Government, must permanently do business in importations of the same merchandise at great and inequitable disadvantage with its competitors.

These were doubtless the reasons which actuated the Court of Customs Appeals when the question was first presented to it to hold that the general principle of *res judicata* should have only limited application to its judgments. . . . The fact that objection to the practice has never been made before, in the history of this Court or in the history of the Court of Customs Appeals in eighteen years of its life, is strong evidence not only of the wisdom of the practice but of general acquiescence in its validity." 274 U.S. at 236–37, 47 S.Ct. at 619.

A different judicial attitude has prevailed as to the application of the doctrine of collateral estoppel to reappraisement cases. In *J. E. Bernard & Co. v. United States*, 324 F.Supp. 496, 66 Cust.Ct. 545, R.D. 11739 (1971), this court held that reappraisement cases, unlike classification cases, were close conceptually to tax cases and other non-customs litigation, and thus more suitable to the application of collateral estoppel. In reappraisement cases the public policy of avoiding discrimination and the unequal administration of justice was deemed to be best served by the application of the doctrine of collateral estoppel.

In the *Bernard* case, based upon the analogy of reappraisement cases to tax cases,

this court applied to a reappraisement case the doctrine of collateral estoppel as enunciated by the Supreme Court in *Sunnen*. Restating the requirements for collateral estoppel, Judge Maletz, writing for this court in *Bernard*, stated:

"(1) Where two cases involve income taxes in different tax years, collateral estoppel must be confined to situations were the matter raised in the second suit is identical in all respects with that decided in the first and where the controlling facts and applicable legal rules remain unchanged; (2) collateral estoppel is inapplicable in litigation regarding income taxes for different years where decisions of the Court intervening between the earlier and later litigation have changed the applicable legal principles; (3) if the relevant facts in the two cases are separable, even though they are similar or identical, collateral estoppel does not govern the legal issues which recur in the second case." 324 F.Supp. at 500, 66 Cust.Ct. at 549. (Citations omitted.)

In *Bernard*, since these criteria were satisfied, the doctrine of collateral estoppel was applied to preclude relitigation in a case with facts very similar to those of the case at bar. The plaintiff in *Bernard* had previously imported six purifiers which were the subject of *Globe Shipping Co. v. United States*, 63 Cust.Ct. 639, R.D. 11687 (1969). In *Globe*, the importer challenged the government's constructed value appraisement which was based on invoice price. The importer claimed that either export value or constructed value based on invoice price, plus packing, less 20% should have been the proper appraisement. Because of the plaintiff's failure to introduce evidence of market value necessary to prove either the export value or the constructed value claim, the court upheld the government's appraisement. No appeal was taken of the court's decision. In the present case, there was an appeal of the

test case to the Appellate Term of this court, and also to the Court of Customs and Patent Appeals, both resulting in an affirmance of the judgment of the trial court.

The subsequent litigation in *Bernard* pertained to a shipment by the same exporter of three identical purifiers which were sent at the same price to the same importer under the same order and contract as the prior merchandise. The case was submitted to the court on the record of the earlier case. There was no additional evidence submitted, and no other issues were raised. The court found that the only distinction between the two cases was that different importations were involved and, therefore, two separate causes of action. Applying the criteria set forth in the *Sunnen* case, this court concluded that, since the "matters which had been decided in the first case had remained static, factually and legally," collateral estoppel required that the prior judgment be deemed conclusive. Hence, a relitigation of the question of value was precluded. 324 F.Supp. 496, 66 Cust.Ct. at 552.

■ The doctrine of collateral estoppel was also applied in the subsequent case of *H. M. Young Associates, Inc. v. United States*, 349 F.Supp. 1007, 69 Cust.Ct. 155, C.D. 4388 (1972), aff'd, 505 F.2d 721, 62 CCPA 20, C.A.D. 1138 (1974) in which the facts are also similar to those in *Nichols*. In *H. M. Young*, the appellate court recast as follows the *Sunnen* formula made applicable to reappraisement cases by *Bernard*:

"(1) Were the issues decided in the prior action identical with those presented in the instant action? (2) Was there a final judgment on the merits in the prior action? (3) Was the party against whom the plea is asserted a party, or in privity with a party, to the prior action? *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948)." 505 F.2d at 723, 62 CCPA at 22.[11]

---

11. The court need not apply collateral estoppel if special factors would cause an injustice. In a case decided before *H. M. Young*, collateral estoppel was not applied even though the issues of fact and law, and the parties were the same as in a prior case in which there was a final judgment on the merits. The defendant's motion to dismiss the appeal for reappraisement on the ground of collateral estoppel was denied since an injustice would have resulted

In *H. M. Young*, the Court of Customs and Patent Appeals applied these criteria to the second reappraisement case involving elastic fabric, and found that the merchandise, the parties and the facts were the same as those in the earlier case of *H. M. Young Associates, Inc. v. United States*, 64 Cust.Ct. 642, R.D. 11695 (1970). The appellate court noted that the only outstanding question was whether the issues were the same in both cases. The fabric had been imported by H. M. Young, entered at the invoice price and resold by Jaymar-Ruby, Inc. (Jaymar). Jaymar paid patent royalty and trademark certification fees to parties who were neither importers nor manufacturers, and these fees were added by the government to their constructed value appraisement. The court in the first case found that these fees were improperly added to the determination, and that the importer was entitled to rely on the separability rule under the presumption of correctness attaching to the remainder of the reappraisement. In view of an intervening decision by the appellate court on the separability rule, defendant contended that there was an intervening change of law which raised an issue not litigated in the prior case. The appellate court held that the intervening decision had not changed the legal climate. Therefore, it did not prevent the application of the doctrine of collateral estoppel.

The public policy reason for the application of both *res judicata* and collateral estoppel is to prevent repetitious litigation. *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). See *Von Moschzisker, "Res Judicata,"* 38 Yale L.J. 299 (1928–1929). A similar expression of policy may be found in the Court of Cus-

toms and Patent Appeals case of *Seven-Up Co. v. Bubble Up Corp.*, 312 F.2d 472, 475, 50 CCPA 1012, 1016, P.A.D. 6881 (1963):

"It is the essence of *res judicata* that an end should be put to litigation—that when the parties have previously litigated a cause, they are barred from litigating the matter anew in a separate action. *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195. If the second suit is for a different cause of action, any facts actually determined in the first suit between the same parties are conclusively established."

In the present *Nichols* case, it is clear that the standards enunciated in *Sunnen*, restated by both this court and the appellate court in *Bernard* and *H. M. Young*, have been satisfied. The legal issue presented here, i. e., the proper valuation of the imported merchandise, has already been decided by the final judgment in the test case of *Nichols & Company, Inc. v. United States*, 60 Cust.Ct. 917, R.D. 11555 (1968). Consequently, since the plaintiff is precluded from relitigating this issue by the doctrine of collateral estoppel, defendant's motion for summary judgment is granted. This holding furthers the public policy considerations expressed in *Sunnen* and *Seven-Up Co.* which prevent and preclude repetitious litigation of issues which have already been decided.

The initial requirement for collateral estoppel, that the controlling facts remain static, has been satisfied. Clearly, in both *Nichols* cases, the parties are the same.[12] As in both *Bernard* and *H. M. Young*, the only factual distinction between the two *Nichols* cases is that there are different

---

by the application of the doctrine. The reasons for the injustice were the failure of the defense to interpose the claim until after trial and submission of plaintiff's brief; submission by plaintiff of new evidence without defendant's objections; and the inability of the court to find "that the new litigation was truly needless or redundant." *Service Afloat, Inc. v. United States*, 337 F.Supp. 458, 68 Cust.Ct. 225, 226, R.D. 11761 (1972), *aff'd*, 353 F.Supp. 885, 70 Cust.Ct. 275, A.R.D. 311 (1973), *appeal dismissed*, 60 CCPA 185 (1973).

**12.** Since the parties are the same, it is not necessary to discuss developments in the law, dispensing with the requirement of mutuality of parties for the application of the doctrine of collateral estoppel. See *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 320 *et seq*, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Shore v. Parklane Hoisery Co.*, 565 F.2d 815, 818 (2d Cir., 1977).

importations. In the present *Nichols* case, as in the prior *Nichols* case, i. e., the test case, the same three types of merchandise were sent by the same French exporter to the same United States importer during the same periods of time. Likewise, the same foreign value appraisement was found by the Customs Service. Finally, as in *Bernard,* all the shipments were made under the same contract. In view of this identity of salient facts, there is no dispute that the facts cannot be considered "separable."

■ Since the applicable legal principles have remained unchanged, another requirement has been met. The revision of the rules of this court on discovery, subsequent to the first *Nichols* case, is not the type of "change or development in the controlling legal principles" contemplated by *Sunnen.* See also *State Farm Mutual Automobile Insurance Co. v. Duel, Commissioner of Insurance,* 324 U.S. 154, 65 S.Ct. 573, 89 L.Ed. 812 (1945) and cases cited therein.

There is also the required identity of issues for the application of collateral estoppel. The issue presented in the first *Nichols* case pertained to the correctness of the government's appraised valuation of the imported fibers. This issue was the central question decided by the judgments of the trial court, the intermediate appellate court and the Court of Customs and Patent Appeals. Since the present case attempts to raise and relitigate the same valuation issue, the requirement for an identity of issues is likewise satisfied. This identity of issues exists even though the importations which gave rise to the dispute took place at different times. That this difference in time is insignificant is indicated by the *Restatement of the Law of Judgments,* § 68, comment (c), which describes a case in which "the overlap [of events] is so substantial that preclusion is plainly appropriate."

The final requirement for the application of collateral estoppel is that the issue was actually and necessarily litigated to a final judgment on the merits. Plaintiff asserts that the test case decision on export value did not actually litigate the merits of the valuation issue. It argues that the court

premised its decision upon the failure of the importer to carry its initial burden of disproving foreign value for "similar" merchandise, and, therefore, never actually litigated the merits of the question of export value.

As was necessary in the first *Nichols* case, plaintiff in the case at bar must prove that the appraisement of the customs officials is incorrect, and that its claimed basis of reappraisement is correct. 28 U.S.C. § 2635. Clearly, both the Appellate Term of this court and the Court of Customs and Patent Appeals held in that case that the plaintiff failed to discharge its burden of negating the correctness of the foreign value appraisement. On three occasions the valuation issue in the first *Nichols* case was raised, and in both decisions of the appellate courts it was determined unnecessary to reach the claimed basis of appraisement. Having found that plaintiff had not shown that the appraisement was wrong, it was not necessary to proceed to determine whether any claimed appraisement was correct. It cannot be denied that the specific question or issue presented in the prior case was the correctness of the appraisement. The correctness of the valuation was not only put in issue by the pleadings and litigated at the trial, but was clearly submitted to the court for its determination, and a final decision was rendered.

In *James Talcott, Inc. v. Allahabad Bank, Ltd.,* 444 F.2d 451, 459–60 (1971), the Court of Appeals for the Fifth Circuit, citing the *Restatement of Judgments,* stated:

"As a general rule, where a question of fact is put in issue by the pleadings, and is submitted to the jury or other trier of facts for its determination, and is determined, that question of fact has been 'actually litigated.' *Restatement of Judgments* § 68, comment (c) (1942)."

It is significant to note that the recent commentary to the cited section 68 of the *Restatement* explicitly includes a determination based upon a failure to sustain one's burden of proof. From the following, the view of the *Restatement* on "when an issue is actually litigated" is made eminently clear:

"When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section. . . . *A determination may be based on a failure* of pleading or *of proof as well as on the sustaining of the burden of proof.*" *Restatement (Second) of Judgments,* § 68, comment (d) at 6–7 (Tentative Draft No. 4, 1977). (Emphasis added.)

Although the decision in the first *Nichols* case was premised upon the plaintiff's failure to overcome the presumption of correctness attaching to the appraisement, it cannot be doubted that the valuation issue was nonetheless "actually litigated." The critical factors are that the valuation issue was raised, actually put before the court and finally determined.

The *Sunnen* case indicated that, for collateral estoppel to apply, the issues which are sought to be relitigated must be "identical in all respects" with those decided in the first action. This has been interpreted to require that the issues have been actually and necessarily litigated in the first case. *Partmar Corp. v. Paramount Pictures Theatres Corp.,* 347 U.S. 89, 100–101, 74 S.Ct. 414, 98 L.Ed. 532 (1954), *reh. denied,* 347 U.S. 931, 74 S.Ct. 527, 98 L.Ed. 1083 (1954);[13] *United States v. International Building Co.,* 345 U.S. 502, 506, 73 S.Ct. 807, 97 L.Ed. 1182 (1953), *reh. denied,* 345 U.S. 978, 73 S.Ct. 1120, 97 L.Ed. 1392 (1953).

The *Partmar* case is analogous to the case at bar in that, in both cases, the first decision held that plaintiff failed to sustain its burden of proof on an issue which was sought to be relitigated in the subsequent action. In *Partmar,* the decision in the first action held that Paramount leases and agreements were not in violation of the Sherman Act since Paramount had not participated in any conspiracy in restraint of trade. That determination was sufficient

to invoke a collateral estoppel to preclude Partmar from relitigating the conspiracy issue in the second action which was a treble damage counterclaim against Paramount. The crucial factor in the court's application of collateral estoppel to the treble damage action was its determination that the conspiracy question had already been decided in the first case since that finding had been necessary to the earlier judgment.

In the case at bar the Court of Customs and Patent Appeals found that the plaintiff failed to disprove the appraiser's foreign value appraisement for "similar" merchandise. That finding was "necessary" to the court's holding that plaintiff did not overcome the presumption of correctness attaching to the foreign value appraisement. Thus, the legal situation in the case at bar is similar to that in *Partmar.* The issues which were the subject of collateral estoppel—conspiracy in *Partmar* and the proper valuation of imported merchandise here—were actually and necessarily raised, litigated and decided in prior actions.

The court's decision in the first *Nichols* case is clearly a decision "on the merits." "Merits" have been defined as the "real or substantial grounds of action or defense, as distinguished from matters of practice, procedure, jurisdiction or form." *Clegg v. United States,* 112 F.2d 886 (10th Cir. 1940). See also *Providential Development Co. v. United States Steel Co.,* 236 F.2d 277 (10th Cir. 1956). Decisions based upon failures of proof have been held to be on the substantial grounds of a case, and, therefore, are decisions "on the merits." *Fairmont Aluminum Co. v. Commissioner,* 222 F.2d 622 (4th Cir. 1955), *cert. denied,* 350 U.S. 838, 76 S.Ct. 76, 100 L.Ed. 748 (1955), *reh. denied,* 350 U.S. 905, 76 S.Ct. 177, 100 L.Ed. 795 (1955), *reh. denied,* 352 U.S. 913, 77 S.Ct. 144, 1 L.Ed.2d 120 (1956). See *North Coun-*

---

**13.** In the *Application of Clark,* 522 F.2d 623, 634, 187 U.S.P.Q. 209, P.A.D. 75–505 (1975), although a patent case, Judge Miller of the Court of Customs and Patent Appeals, in a concurring opinion, approvingly referred to the *Partmar* case as having held that "[a]n essen-

tial element of the rule of collateral estoppel is substantial identity of the issue or issues in each action." See also *In re Pritchard,* 463 F.2d 1359, 1364, 59 CCPA 1284, P.A.D. 8665 (1972).

*ties Hydro-Electric Co. v. United States,* 151 F.Supp. 322, 324, 138 Ct.Cl. 380, 383 (1957). See also *Restatement (Second) of Judgments,* § 68, comment (d) at 6–7 (Tentative Draft No. 4, 1977).

■ Thus, as with the "actually litigated" standard, the omission of the appellate courts in the first case to "reach the question of another value for the merchandise" does not mean that the decision was not "on the merits." As stated by Mr. Justice Frankfurter in *Angel v. Bullington,* 330 U.S. 183, 190, 67 S.Ct. 657, 661, 91 L.Ed. 832 (1947):

> "It is a misconception of *res judicata* to assume that the doctrine does not come into operation if a court has not passed on the 'merits' in the sense of the *ultimate* substantive issues of a litigation." (Emphasis added.)

In the first *Nichols* case the appellate courts considered and decided the "merits" of plaintiff's claim by their holdings that the plaintiff had failed to overcome the presumption of correctness attaching to the appraisement. These holdings addressed directly the crux of the valuation issue before the court, i. e., whether the valuation by the customs officials was erroneous. It was not a mere subsidiary issue of procedure, but the real or substantial ground of the case. Since the prior case was decided "on the merits," the plaintiff is estopped from relitigating the issue of value in the present action.

In order to prevail in the present action, plaintiff must raise the valuation issue and overcome the presumption of correctness attaching to the appraisement of the customs officials. To meet this burden, it must negate the existence of foreign value for such or similar merchandise for the imported merchandise. This issue cannot be relitigated. Since the holding that plaintiff did not negate the existence of foreign value was necessary in the prior case, and since

that issue was litigated and actually decided on the merits, plaintiff is estopped from raising it anew.[14]

The statute which sets forth plaintiff's burden of proof in order to prevail in any matter in the Customs Court states that "[t]he decision of the Secretary of Treasury, or his delegate, is presumed to be correct," and that "[t]he burden to prove otherwise shall rest upon the party challenging a decision." 28 U.S.C. § 2635. Plaintiff had its opportunity "to prove otherwise" in the first *Nichols* case. It failed to bear this burden.

In view of the foregoing, it is not necessary to discuss plaintiff's alternative claim of United States value. In the absence of any support in the moving papers it is likewise unnecessary to pass upon the plaintiff's allegation that the defendant withheld material evidence. Without a clear showing of some fundamental unfairness in the prior proceeding, to fail to apply the doctrine of collateral estoppel would do violence to the socially desirable policies that it is designed to foster. See *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 328, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Shore v. Parklane Hosiery Co.,* 565 F.2d 815, 818, 819 (2d Cir. 1977).

Plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment and severance is hereby granted.

Judgment will issue accordingly.

---

14. In the recent case of *Arnold Pickle & Olive Co. v. United States,* 435 F.Supp. 921, 922, 79 Cust.Ct. ——, ——, C.D. 4712 (1977), the court specifically found the government's appraisement to be wrong, and stated that "it could not

be correct to estop [the parties] from litigating an issue which was not resolved in the first case—the correct value of the imported merchandise."