**NICHOLS & CO., INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 78–9, C.A.D. 1217.**

United States Court of Customs and Patent Appeals.

Nov. 16, 1978.

William E. Melahn, Doherty & Melahn, Boston, Mass., attorneys of record, for appellant.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Chief, Customs Section, Joseph I. Liebman, Saul Davis, New York City, for the United States.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Judges, and FORD,* Judge.

FORD, Judge.

This appeal is from the judgment of the United States Customs Court, 447 F.Supp. 455, 80 Cust.Ct. ——, C.D. 4734 (1978) granting the Government's motion for summary judgment based on the doctrine of collateral estoppel. We affirm.

The Customs Court held the importer was estopped from relitigating the valuation issue decided by a prior reappraisement case between the parties involving the same merchandise, appraised at the same value (which value remained constant during the period of time involved herein), exported by the same French manufacturer, imported by the same importer under the same contract. *Nichols & Co. v. United States*, 60 Cust.Ct. 917, R.D. 11555 (1968), *aff'd*, 64 Cust.Ct. 849, A.R.D. 271 (1970), *aff'd*, 454 F.2d 1183 59 CCPA 67, C.A.D. 1041 (1972), (hereinafter referred to as *Nichols I* ).

This appeal involves cross-motions for summary judgment. The merchandise consists of nylon staple fiber, substandard acrylic staple fiber, and first grade acrylic staple fiber and is identical to the merchandise under consideration in *Nichols I.*

The merchandise is described in the final list promulgated by the Secretary of the Treasury, TD 5421, and in both cases was appraised on the basis of foreign value under section 402a(c) of the Tariff Act of 1930 as modified by the Customs Simplification Act of 1956, 19 U.S.C. 1402(c). In *Nichols I,* the importer contended the proper basis of appraisal to be export value as contained in section 402a(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, as plaintiff does in the case at bar. The pertinent statutory provisions provide:

*1402. Value (alternative)*

*(a) Basis*

For the purpose of this chapter, the value of imported articles designated by the Secretary of the Treasury as provided for in section 6(a) of the Customs Simplification Act of 1956 shall be—

(1) *The foreign value or the export value, whichever is higher;*

(2) If the appropriate customs officer determines that neither the foreign value nor the export value can be satisfactorily ascertained, then the United States value;

(3) If the appropriate customs officer determines that neither the foreign value, the export value, nor the United States value can be satisfactorily ascertained, then the cost of production;

---

* The Honorable Morgan Ford, United States Customs Court, sitting by designation.

(4) In the case of an article with respect to which there is in effect under section 1336 of this title a rate of duty based upon the American selling price of a domestic article, then the American selling price of such article. [Emphasis added.]

\*　　\*　　\*　　\*　　\*　　\*

*(c) Foreign value*

The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which *such or similar merchandise* is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. [Emphasis added.]

*(d) Export value*

The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The merchandise was appraised on the basis of foreign value. Thereafter the importer instituted an action for reappraisement contending that since the merchandise was not freely offered for sale in France for home consumption, foreign value did not exist. Accordingly, the importer claimed the proper basis of appraisement should have been export value, which value the importer contended was the entered value. A test case (*Nichols I*) was instituted involving three exportations in May of 1962. Cases involving similar exportations (including all of the importations before us on appeal) were suspended pending final determination of *Nichols I.*

■ The trial court in *Nichols I* held foreign value did not exist inasmuch as the merchandise was not freely offered for sale in the French home market. However, the court denied reappraisement since the importer failed to establish the correct value.[1]

The Appellate Term of the Customs Court affirmed the lower court's decision based upon a different legal principle. The court therein held the importer did not negate foreign value since it failed to establish that no similar merchandise was sold in the French home market. Accordingly, the presumption of correctness attaching to the appraisement remained unrebutted. The court, therefore, concluded it was unnecessary to reach the question of export value. The reasoning and decision of the Appellate Term was affirmed in C.A.D. 1041, *supra,* by this court.

Subsequent to the decision in *Nichols I,* rules for discovery in the Customs Court were liberalized, affording the importer an opportunity to depose the customs examiner and to review the Treasury Department documents upon which the appraisement was made. In *Nichols II* the importer attempted to offer additional evidence, uncovered as a result of discovery, which allegedly supports the importer's position that foreign value does not exist and that the proper basis for valuation is export value.

The threshold question raised by this appeal is whether or not the doctrine of collat-

---

1. To rebut the presumption of correctness which attaches to an appraisement, an importer must prove not only that the appraisement is incorrect but also establish the correct appraisement. *Dana Perfumes Corp. v. United States,* 524 F.2d 750, 751–2, 63 CCPA 43, 45, C.A.D. 1162 (1975).

eral estoppel is applicable in the instant case. In the past, this doctrine of estoppel has been applied in customs reappraisement cases[2] but has not been applied in customs classification cases.[3]

Achieving a final resolution of disputes is an essential goal of our legal system. Doctrines such as collateral estoppel and *res judicata* are important tools which enable the courts to realize this goal. These doctrines are set aside only for compelling reasons. One exception, however, is customs classification litigation, where application of the doctrine of collateral estoppel would create a special problem.

Since collateral estoppel only binds parties and their privies, its application creates a potential for discrimination between those bound by a particular decision and those not bound. In classification cases this discrimination is particularly troublesome due to its duration. To paraphrase the Supreme Court in *Stone & Downer, supra,* collateral estoppel remains in effect for as long as the controlling facts remain the same. In classification cases this would be for as long as the classification statute and the merchandise remain unchanged.

In customs reappraisement cases, however, the prospect of discrimination over an extended period of time is unlikely, because the controlling facts are subject to significant change from case to case. Some of the controlling facts which may cause the variance are the following statutory elements required to be found by the appraising officer in ascertaining foreign value:

(1) the market value or price at the time of exportation;

(2) the merchandise must be freely offered for sale in the home market to all purchasers;

(3) in the principal markets of the country of exportation;

(4) in the usual wholesale quantities;

(5) in the ordinary course of trade.

■ Collateral estoppel is applicable only in a customs reappraisement case where the facts are so similar that the value of the merchandise remains the same. Since the reason for precluding collateral estoppel in classification cases does not apply to reappraisement cases, the Customs Court's distinction between them for purposes of applying collateral estoppel appears justified.

■ Since we agree with the Customs Court that collateral estoppel is applicable in customs reappraisement litigation, we reach the question of whether or not it was properly applied. Collateral estoppel prevents relitigation of issues actually and necessarily decided in a prior action between the parties where the controlling facts and applicable legal rules remain unchanged. *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). Appellant argues collateral estoppel was improperly applied for the following reasons:

(1) *Nichols II* involves issues not actually decided in *Nichols I* ;

(2) the controlling facts in the two cases are different;

(3) there has been an intervening change in the law.

[4] The ultimate decision in *Nichols I* was that Nichols had failed to rebut the presumption of correctness that attached to the appraised value since the importer had failed to establish the lack of foreign value, for similar merchandise. As the Customs Court correctly noted, an issue is actually litigated for purposes of collateral estoppel even though the determination is based on a failure of proof. Restatement 2d of Judgments, § 68, comment (d) at 6–7 (Tentative Draft No. 4, 1977). Thus, the issue of foreign value for similar merchandise was actually and necessarily litigated in *Nichols I.*

**2.** *J. E. Bernard & Co. v. United States,* 324 F.Supp. 496, 66 Cust.Ct. 545, R.D. 11739 (1971); *H. M. Young Associates, Inc. v. United States,* 439 F.Supp. 1007, 69 Cust.Ct. 155, C.D. 4388 (1972), *aff'd,* 505 F.2d 721, 62 CCPA 20, C.A.D. 1138 (1974).

**3.** *United States v. Stone & Downer Co.,* 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013 (1927).

■ To rebut the presumption of correctness in *Nichols II,* appellant must establish that similar merchandise was not sold in the home market. In *Nichols I* the court decided this point adversely to the importer. The fact that *Nichols II* also involves issues not decided by *Nichols I* cannot assist appellant. The burden of overcoming the presumption of correctness attaching to the appraised value rests upon the importer. In order for the importer to obtain a favorable decision he must relitigate the issue of foreign value of similar merchandise. This was the one issue which was actually and necessarily determined against him in *Nichols I.*

■ Appellant urges *Nichols I* involved importations in May of 1962 only, whereas, *Nichols II* involves importations throughout 1962. However, this does not constitute a change in the controlling facts since there is no evidence the market value of the imported merchandise changed during 1962. The record actually supports the conclusion that the value of the imported merchandise remained constant throughout 1962. Every 1962 importation received the same presumptively correct appraisal. Furthermore, Treasury Department special agent's report ¶ 3–147.1, dated November 26, 1963, establishes the French manufacturer's home market price for first quality fiber remained the same from October, 1961, until April, 1963. The reports appear to be silent as to the substandard merchandise.

■ Appellant contends the liberalization of discovery rules in customs cases during the interim between *Nichols I* and *Nichols II* constituted an intervening change in the law precluding the application of collateral estoppel. This contention is not persuasive. Appellant has failed to bring to our attention any case in which an intervening change in procedural law (as opposed to substantive law) has precluded the application of collateral estoppel. Additionally, appellant has failed to convince us that the new evidence obtained as a result of the more liberal discovery rules would have changed the result had it been available to appellant in *Nichols I.*

The new evidence consists of Treasury Department special agents' reports upon which the appraisement in question was based. To have any bearing on this case such new evidence must relate to the issue of foreign value for similar merchandise, since this is the only issue to which an estoppel has been applied. In this regard the special agents' reports are silent.

Appellant urges us to infer from this silence that no similar merchandise was sold in France. Appellant argues further that had the investigating officer found similar merchandise sold in France he would have reported it. Accordingly, his failure to report the existence of similar merchandise is proof that it did not exist. We find this reasoning unpersuasive. It is just as plausible to conclude that the report is silent in this regard because the investigator, as did Customs Examiner Sullivan, stopped searching for a foreign value for similar merchandise once he discovered the foreign value for "such" merchandise.

Our conviction that the discovery rules then in force had little to do with the outcome in *Nichols I* is reinforced by the fact that in the first trial appellant called as a witness an officer of the French manufacturer who was one of the sources of information for the special agents' reports. Appellant conceivably could have established through this witness whether or not similar merchandise was sold or offered for sale in France.

Appellant's remaining argument is based on the recent Customs Court decision in *Arnold Pickle & Olive Co. v. United States,* 435 F.Supp. 921, 79 Cust.Ct. 50, C.D. 4712 (1977). In that case, the court concluded collateral estoppel was inappropriate where an erroneous appraisal remained in effect due to the failure to prove the correct appraisal. The court reasoned such a result should not be the subject of an estoppel in a later case because it was not a precise determination of the issue of valuation.

Appellant asserts *Arnold Pickle* is precisely the same as the case at bar. However, this is not the case. The original decision in *Arnold Pickle* held the appraisement to be erroneous. In *Nichols I*, however, this court and the Appellate Term of the Customs Court did not hold the appraisement to be erroneous. The courts held Nichols had failed to negate the possibility that the presumptively correct appraisement was based on the foreign value of similar merchandise.

Whether collateral estoppel is applicable in a case involving an erroneous appraisement is not before the court.

Accordingly, for the reasons set forth herein, the judgment of the Customs Court is *affirmed.*