**Harold Elton LADWIG**

v.

**UNITED STATES.**

**C.D. 4768; Court No. 75-6-01444.**

United States Customs Court.

Sept. 19, 1978.

Bronz & Farrell, Washington, D.C. (Edward J. Farrell, Washington, D.C., of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D.C., Velta A. Melnbrencis, Trial Atty., New York City, for defendant.

FORD, Judge:

Plaintiff by this action contests the assessment of dumping duties on certain importations of pig iron imported from Canada. Upon liquidation dumping duties ranging from $8.26 to $11.42 per long ton were assessed by customs. These duties were equal to the difference between the foreign market value as defined in section 205 of the Antidumping Act of 1921, as amended, 19 U.S.C. § 164 (1970), and the purchase price as defined in section 203 of said act, 19 U.S.C. § 162 (1970).

The parties agree there is no issue concerning the purchase price of $46.00 (U.S.) per long ton. Plaintiff, however, contends there is no foreign market value within the meaning of section 205 *supra,* and the absence of a foreign market value requires the use of constructed value as prescribed by section 206 of said act, as amended *supra,* 19 U.S.C. § 165 (1970). Plaintiff alleges the use of constructed value in making the comparison with the purchase price should have been used in determining the existence and extent of any dumping margins. The constructed value, plaintiff contends, is $57.15 (Canadian) per long ton.

The pertinent statutory provisions read as follows:

## STATUTES

The Antidumping Act of 1921, as amended:

Section 205, 19 U.S.C. § 164 (1970):

Determination of foreign market value.

For the purposes of sections 160 to 171 of this title the foreign market value of imported merchandise shall be the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is sold or, in the absence of sales, offered for sale in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade for home consumption (or, if not so sold or offered for sale for home consumption, or if the Secretary determines that the quantity sold for home consumption is so small in relation to the

quantity sold for exportation to countries other than the United States as to form an inadequate basis for comparison, then the price at which so sold or offered for sale for exportation to countries other than the United States), plus, when not included in such price, the cost of all containers and coverings and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for shipment to the United States, except that in the case of merchandise purchased or agreed to be purchased by the person by whom or for whose account the merchandise is imported, prior to the time of exportation, the foreign market value shall be ascertained as of the date of such purchase or agreement to purchase. In the ascertainment of foreign market value for the purposes of sections 160 to 171 of this title no pretended sale or offer for sale, and no sale or offer for sale intended to establish a fictitious market, shall be taken into account. If such or similar merchandise is sold or, in the absence of sales, offered for sale through a sales agency or other organization related to the seller in any of the respects described in section 166 of this title, the prices at which such or similar merchandise is sold or, in the absence of sales, offered for sale by such sales agency or other organization may be used in determining the foreign market value.

Section 206, 19 U.S.C. § 165 (1970):

Constructed value.

(a) Determination.

For the purposes of sections 160 to 171 of this title, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise under consideration which would ordinarily permit the pro-

duction of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise under consideration which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, except that (A) the amount for general expenses shall not be less than 10 per centum of the cost as defined in paragraph (1), and (B) the amount for profit shall not be less than 8 per centum of the sum of such general expenses and cost; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise under consideration in condition, packed ready for shipment to the United States.

\*     \*     \*     \*     \*     \*

Section 209, 19 U.S.C. § 168 (1970):

Appraisal.

In the case of all imported merchandise, whether dutiable or free of duty, of a class or kind as to which the Secretary of the Treasury has made public a finding as provided in section 160 of this title, and as to which the appropriate customs officer has made no appraisement before such finding has been so made public, it shall be the duty of such customs officer, by all reasonable ways and means to ascertain, estimate, and appraise (any invoice or affidavit thereto or statement of constructed value to the contrary notwithstanding) and [sic] the foreign market value or the constructed value, as the case may be, the purchase price, and the exporter's sales price, and any other facts which the Secretary may deem necessary for the purposes of sections 160 to 171 of this title.

Section 212, 19 U.S.C. § 170a (1970):

Definitions.

For the purposes of sections 160 to 171 of this title—

(1) The term "sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without regard to restrictions as to the disposition or use of the merchandise by the purchaser except that, where such restrictions are found to affect the market value of the merchandise, adjustment shall be made therefor in calculating the price at which the merchandise is sold or offered for sale.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise under consideration, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise under consideration.

(3) The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which a determination for the purposes of sections 160 to 171 of this title can be satisfactorily made:

(A) The merchandise under consideration and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, the merchandise under consideration.

(B) Merchandise which is identical in physical characteristics with, and was produced by another person in the same country as, the merchandise under consideration.

(C) Merchandise (i) produced in the same country and by the same person as the merchandise under consideration, (ii) like the merchandise under consideration in component material or materials and in the purposes for which used, and (iii) approximately equal in commercial value to the merchandise under consideration.

(D) Merchandise which satisfies all the requirements of subdivision (C) except that it was produced by another person.

(E) Merchandise (i) produced in the same country and by the same person and of the same general class or kind as the merchandise under consideration, (ii) like the merchandise under consideration in the purposes for which used, and (iii) which the Secretary or his delegate determines may reasonably be compared for the purposes of sections 160 to 171 of this title with the merchandise under consideration.

(F) Merchandise which satisfies all the requirements of subdivision (E) except that it was produced by another person.

(4) The term "usual wholesale quantities", in any case in which the merchandise in respect of which value is being determined is sold in the market under consideration at different prices for different quantities, means the quantities in which such merchandise is there sold at the price or prices for one quantity in an aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity.

Section 202, 19 U.S.C. § 161 (1970):

## SPECIAL DUMPING DUTY

Amount of duty to be collected; determination of foreign market value of goods.

(a) In the case of all imported merchandise, whether dutiable or free of duty, of a class or kind as to which the Secretary of the Treasury has made public a finding as provided for in section 160 of this title, entered, or withdrawn from warehouse, for consumption, not more than one hundred and twenty days before the question of dumping was raised by or presented to the Secretary or any person to whom authority under said section has been delegated, and as to which no appraisement has been made before such finding has been so made public, if the purchase price or the exporter's sales

price is less than the foreign market value (or, in the absence of such value, then the constructed value) there shall be levied, collected, and paid, in addition to any other duties imposed thereon by law, a special dumping duty in an amount equal to such difference.

\* \* \* \* \* \*

The record consists of seven exhibits introduced on behalf of plaintiff, the receipt in evidence, without being marked, of the official papers, and a stipulation between counsel that there were only three producers of pig iron in Canada, i. e., Cominco, Ltd., Algoma Steel Corporation, Ltd. and Quebec Iron and Titanium Corporation. Plaintiff does not dispute the purchase price as it appears on the official court papers which was utilized by customs officials in determining the dumping duties.

It is plaintiff's position that "foreign market value" as set forth in section 205 of said act *supra* does not exist, and accordingly customs should have utilized constructed value as set forth in section 206 *supra* in determining the applicability of dumping duties. In support of this position plaintiff's exhibit 1 was introduced into evidence. Said exhibit is an affidavit of Michael C. D. Hobbs, chairman and chief executive officer of Western Canada Steel, Ltd., a wholly owned subsidiary of Cominco, Ltd., the manufacturer of the pig iron involved herein. Mr. Hobbs' affidavit states that Western Canada Steel, Ltd., handled all sales of pig iron for its parent company until production was discontinued. Said company served as marketing agent for all sales in Canada and sold for export to the United States to Associated Metals & Minerals Corporation of New York (the actual importer herein—Harold Elton Ladwig— being a customhouse broker). Attached to said affidavit is a copy of a letter addressed to George Bronz, the deceased partner of counsel for plaintiff, from Mr. Hobbs of Western Canada Steel, as well as a list of home sales of pig iron.

The letter indicates the termination of the production of pig iron was the result of an explosion and fire which destroyed their furnace, and reconstruction was not contemplated. It was also indicated with respect to prices in the home market that:

Our prices in the Canadian market have varied based upon a number of factors which we take into account, but there is no regular price structure in terms of class of customer, quantity or other factors which are specifically definable.

All our sales are made on a delivered price basis, per long ton, and all money amounts are given in Canadian currency. No discounts are allowed. As shown in the tabulation, these prices include freight, and a standard $1 allowance per long ton for sales commission. The quality of the merchandise sold in the home market is the same as that sold for export to the United States. There is no financial relationship, directly or indirectly, between this company and any purchaser in Canada.

Based upon this information plaintiff contends, since there is no one price at which all could purchase the merchandise from Cominco in the home market, foreign value does not exist and therefore customs should have used constructed value to determine whether dumping duties are applicable.

Such evidence under the statutory provisions governing dumping duties and foreign value in particular as reflected in the statute is insufficient to overcome the presumption of correctness attaching to the action of customs. 28 U.S.C. § 2635 (1970). Unless and until the challenging party introduces evidence to meet every material issue the value found by customs remains unrebutted. *Brooks Paper Company v. United States*, 40 CCPA 38, C.A.D. 495 (1952).

The statutory definition of "such or similar" contained in 19 U.S.C. § 170a must be considered when ascertaining whether a foreign value exists. The parties have stipulated that there were two other producers of pig iron in Canada. There appears to be no dispute that pig iron of the same grade produced in Canada by the other producers

is "like the merchandise under consideration in component material or materials and in the purposes for which used, and approximately equal in commercial value to the merchandise under consideration" as reflected in 19 U.S.C. § 170a(3)(C) and (D). Additionally, plaintiff's exhibit 2 indicates sales to Japan by the shipper. The record is silent on sales to Japan, both as to quantity and price which may be pertinent in determining foreign value under the Antidumping Act. *J. H. Cottman & Co. v. United States*, 20 CCPA 344, T.D. 46114 (1932), *rev'd on other grounds*, 23 CCPA 378, T.D. 48296 (1936). Varying prices without an explanation of the statement that "there is no regular price structure" is insufficient to establish there is no one price at which all could purchase. As a matter of fact, the sales listed in exhibit 1 indicate 28 sales made at the appraised prices or approximately 32% of said sales. The record is also silent on the question of sales or offers by the two other producing companies. *Nichols & Company, Inc. v. United States*, 59 CCPA 67, C.A.D. 1041 (1972). No attempt was made to ascertain this information. Letters were directed to the other two companies only with respect to general expenses and profits. See exhibits 3–6.

■ In view of the foregoing it is unnecessary to consider whether plaintiff has adduced sufficient evidence to establish constructed value. The appraised values not having been overcome are sustained. The dumping duties have therefore been properly assessed.

Judgment will be entered accordingly.