**Harold Elton LADWIG, Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 79–6.**

United States Court of Customs and Patent Appeals.

June 28, 1979.

Edward J. Farrell, Bronz & Farrell, Washington, D. C., attys. of record, for appellant.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, Velta A. Melnbrencis, New York City, for United States.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, and PENN,* Judge.

BALDWIN, Judge.

This is an appeal from the judgment of the United States Customs Court, 81 Cust.Ct. 71, C.D. 4768, 460 F.Supp. 683 (1978), holding foreign market value defined in section 205 of the Antidumping Act of 1921, as amended, 19 U.S.C. § 164 (1970),[1] and not constructed value prescribed in section 206 of the act, as amended, 19 U.S.C. § 165 (1970),[2] to be the proper

---

* The Honorable John G. Penn, United States District Court for the District of Columbia, sitting by designation.

1. 19 U.S.C. § 164 (1970), provides as follows:
 Determination of foreign market value.
 For the purposes of sections 160 to 171 of this title the foreign market value of imported merchandise shall be the price, at the time of‧ exportation of such merchandise to the United States, at which such or similar merchandise is sold or, in the absence of sales, offered for sale in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade for home consumption (or, if not so sold or offered for sale for home consumption, or if the Secretary determines that the quantity sold for home consumption is so small in relation to the quantity sold for exportation to countries other than the United States as to form an inadequate basis for comparison, then the price at which so sold or offered for sale for exportation to countries other than the United States) * * *. In the ascertainment of foreign market value for the purposes of sections 160–171 of this title no pretended sale or offer for sale, and no sale or offer for sale intended to establish a fictitious market, shall be taken into account. If such or similar merchandise is sold or, in the absence of sales, offered for sale through a sales agency or other organization related to the seller in any of the respects described in section 166 of this title,

the prices at which such or similar merchandise is sold or, in the absence of sales, offered for sale by such sales agency or other organization may be used in determining the foreign market value.

2. 19 U.S.C. § 165 (1970), provides, in part, as follows:
 Constructed value.
 (a) Determination.
 For the purposes of sections 160 to 171 of this title, the constructed value of imported merchandise shall be the sum of—
 (1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise under consideration which would ordinarily permit the production of that particular merchandise in the ordinary course of business;
 (2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise under consideration which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, except that (A) the amount for general expenses shall not be less than 10 per centum

value for computing dumping duties on certain importations of pig iron from Canada. We affirm.

## Background

The pig iron was subject to a special dumping duty under section 202 of the Antidumping Act of 1921, as amended, 19 U.S.C. § 161 (1970).[3] Customs assessed dumping duties equal to the differences between the foreign market value and the purchase prices.[4] Appellant challenged these assessments in the Customs Court, arguing that no foreign market value was determinable at the time of the importations and, therefore, the dumping duties should have been computed as the differences between constructed value and purchase prices.

To support its argument, appellant presented to the court seven exhibits which included a list of prices at which the producer of the pig iron in question had sold its production of pig iron in Canada and a letter written by Mr. Hobbs, President of Western Canada Steel, the exporter of the subject pig iron.[5] The letter contained the following statement concerning a Canadian market value:

Our prices in the Canadian market have varied based upon a number of factors which we take into account, but there is no regular price structure in terms of class of customer, quantity or other factors which are specifically definable.

All our sales are made on a delivered price basis, per long ton, and all money amounts are given in Canadian currency. No discounts are allowed. As shown in the tabulation, these prices include freight, and a standard $1 allowance per long ton for sales commission. The quality of the merchandise sold in the home market is the same as that sold for export to the United States. There is no financial relationship, directly or indirectly, between this company and any purchaser in Canada.

No witnesses were called before the Customs Court and appellant offered no further evidence with regard to the pricing policy of any of the other Canadian producers of pig iron.[6]

## Customs Court

The Customs Court noted that foreign market value can be determined from the value at which "such or similar" merchandise was sold or offered for sale. According to the Customs Court, the definition of "such or similar merchandise"[7] required ap-

---

of the cost as defined in paragraph (1), and (B) the amount for profit shall not be less than 8 per centum of the sum of such general expenses and cost; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise under consideration in condition, packed ready for shipment to the United States.

3. 19 U.S.C. § 161 (1970), reads, in part, as follows:

Amount of duty to be collected; determination of foreign market value of goods.

(a) In the case of all imported merchandise, whether dutiable or free of duty, of a class or kind as to which the Secretary of the Treasury has made public a finding as provided for in section 160 of this title * * * if the purchase price or the exporter's sales price is less than the foreign market value (or, in the absence of such value, then the constructed value) there shall be levied, collected, and paid, in addition to any other duties imposed thereon by law, a special

dumping duty in an amount equal to such difference.

4. The values of the purchase prices for the entries of pig iron under consideration are not in dispute.

5. Appellant is the importer of the entries at issue. Western Canada Steel was the exporter of the pig iron and it, in turn, was a wholly owned subsidiary of Cominco Ltd., the producer of the pig iron. The record establishes that at the time of the subject importations there existed at least two other Canadian producers of pig iron.

6. Appellant had attempted to solicit information concerning "the general expenses and profits of other producers of pig iron in Canada" at the time of the subject entries but was unsuccessful due to the claimed confidentiality of the information.

7. The definition of "such or similar merchandise" at the time of the importations at issue

pellant to offer evidence to negate the existence of a determinable market value for each type of merchandise set forth in the subparagraphs of the definition. The court concluded appellant's price list at best showed sales at varying prices but, stated that without further explanation, such a list was insufficient to establish that no one price existed at which the pig iron could be purchased. The court noted that the record was silent with regard to the sales or offers of the other pig iron producers and that, although the record reflected sales to Japan by Western Canada Steel, no information was submitted concerning the prices and quantities involved. The court held that the value as found by Customs had not been rebutted because of appellant's failure to introduce evidence to meet every material issue.[8]

## OPINION

■ Despite appellant's arguments to the contrary, the Customs Court correctly concluded that in order to prove that no foreign market value existed for the pig iron

was provided in section 212(3) of the Antidumping Act of 1921, as amended, 19 U.S.C. § 170a (1970), which provided as follows:

Definitions.
For the purposes of sections 160 to 171 of this title—

  *   *   *   *   *   *

(3) The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which a determination for the purposes of sections 160 to 171 of this title can be satisfactorily made:

(A) The merchandise under consideration and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, the merchandise under consideration.

(B) Merchandise which is identical in physical characteristics with, and was produced by another person in the same country as, the merchandise under consideration.

(C) Merchandise (i) produced in the same country and by the same person as the merchandise under consideration, (ii) like the merchandise under consideration in component material or materials and in the purposes for which used, and (iii) approximately equal in commercial value to the merchandise under consideration.

in question, it was necessary for appellant to negate the existence of a determinable value for each of the types of merchandise described in the six subparagraphs of the definition of "such or similar merchandise."

■ In *Nichols v. United States*, 454 F.2d 1183, 59 CCPA 67, C.A.D. 1041 (1972), this court held that an importer wishing to disprove the existence of foreign value for particular merchandise on the basis of lack of a free market in the country of origin must establish that "similar" as well as "such" merchandise was not freely offered for sale in the relevant country during the relevant period.[9] In essence, the court took cognizance of the conjunctive construction of the provision.

Section 205 of the Antidumping Act of 1921, as amended, 19 U.S.C. 164, also requires examination of the price of "such or similar" merchandise. In this instance, this phrase is defined in the statute [10] and the legislative history of the definition makes clear its meaning.

(D) Merchandise which satisfies all the requirements of subdivision (C) except that it was produced by another person.

(E) Merchandise (i) produced in the same country and by the same person and of the same general class or kind as the merchandise under consideration, (ii) like the merchandise under consideration in the purposes for which used, and (iii) which the Secretary or his delegate determines may reasonably be compared for the purposes of sections 160–171 of this title with the merchandise under consideration.

(F) Merchandise which satisfies all the requirements of subdivision (E) except that it was produced by another person.

8. Having determined that appellant had not disproved the existence of a foreign market value for the pig iron, the court did not consider the correctness of the constructed value urged by appellant for the pig iron.

9. At issue in *Nichols* was whether a foreign value existed for certain nylon and acrylic staple fibers manufactured in France and subsequently imported into this country. The controlling statutory provision was section 402 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1402, which is similar in wording to 19 U.S.C. § 164, supra.

10. *See* supra note 7.

The definition first appeared in Pub.L. No. 85–630, 72 Stat. 583, which amended the Antidumping Act of 1921. The amendment was accompanied by the following statement in the Senate Report:

> Section 5 of the bill, as reported, inserts a new section 212 in the law, entitled "Definitions." Section 212(3) defines "such or similar merchandise." Subparagraphs (A) and (B) describe merchandise which is identical—i. e., "such" merchandise. Subparagraphs (C), (D), (E), and (F) describe merchandise which can be considered "similar." Section 202(b)(3) and (c)(3) of the Antidumping Act, as added by section 2 of the bill, as reported, provide that where "similar" merchandise (i. e., merchandise described in sec. 212(3)(C), (D), (E), or (F)) rather than "such" merchandise (i. e., merchandise described in sec. 212(3)(A) or (B)) is being compared, allowance may be made for differences between the articles under consideration.[11]

No significant amendments were made to the definition of "such or similar merchandise" between the time of its enactment and the date of the subject importations.

With the definition of "such or similar merchandise" and its legislative history in mind, it is apparent that it was incumbent upon appellant to negate the existence of a determinable value under each of the subparagraphs of the definition. Since the only evidence introduced by appellant consisted of the unexplained price lists and the conclusory statement of Mr. Hobbs, and since no evidence was presented concerning the sales of the other Canadian producers of pig iron, we hold that appellant has fallen far short of fulfilling its burden. Further, appellant failed to establish why any offers for sale of pig iron within Canada or sales of pig iron for export to Japan contemporaneously with the subject importations should not have been considered as provided in section 205 of the Antidumping Act, supra.

11. Senate Report No. 1619, 85th Cong., 2d Sess., 7, *reprinted in* (1958) *U.S. Code Cong. & Admin.News*, pp. 3498, 3504.

12. Since we agree with the Customs Court determination that appellant has not disproved

*Conclusion*

Appellant has failed to rebut the existence of a foreign market value for pig iron under section 205 of the Antidumping Act of 1921, as amended, 19 U.S.C. § 164 (1970).[12] The judgment of the Customs Court is *affirmed*.

AFFIRMED.

the existence of a foreign market value for the subject pig iron, we find it unnecessary to consider the correctness of appellant's proposed constructed value.